HAWTHORNE, Justice.
 

 This appeal was taken by the Shell Oil Company, Inc., et al., defendants-appel
 
 *896
 
 lants, from a judgment of the lower court in favor of the Hunter Company, Inc., plaintiff-appellee, cancelling and annulling two oil, gas, and mineral leases and all assignments, sub-leases, and other instruments affecting them, insofar as those instruments cover and apply to the NWj4 of Section 8, Township 11 North, Range 14 West, DeSoto Parish, Louisiana, and awarding the plaintiff-appellee the, sum of $1,500 as attorney’s fees.
 

 The property involved in this suit (400 acres of land) is covered by both of the leases and is described as follows: S % of NW% and SW% of Section 5, and NW % of Section 8, Township 11 North, Range . 14 West, DeSoto Parish, Louisiana.
 

 Plaintiff instituted this suit, praying that the two leases in question be cancelled insofar as they covered the NW % of Section 8, Township 11 North, Range 14 West, containing 160, acres, on the ground that the primary terms of both leases had expired without wells having been drilled on that portion of the leased premises, and praying for $1,500 as attorney’s fees. Both leases were dated July 26, 1935, and were ■ for a primary term of 10 years. This suit was instituted on October 4, 1945.
 

 To plaintiff’s petition an exception of no cause or right of action was filed, and the plaintiff thereafter filed an amended and supplemental petition, alleging that no well had been drilled on any part of the land covered by the leases, but that, prior to the expiration of the primary terms of the leases and while they were in force by virtue of the payment of the delay rentals, a well capable of producing gas in paying quantities had been completed in Section 5, Township 11 North, Range 14 West, on land other than that covered by the leases, and praying in the alternative that the leases be cancelled in their entirety.
 

 To the original petition and the supplemental and amended petition an exception of no cause or right of action was also filed, and, after all the exceptions had been overruled, the case was submitted to the lower court on an agreed statement of facts. Judgment was rendered as herein-above set out, and this appeal followed.
 

 According to the agreed statement of facts, plaintiff is the owner of at least an undivided one-half interest in the oil, gas, and other minerals on and under the property which is the subject of this suit and which is covered by the two oil and gas leases dated July 26, 1935, each having a primary term of 10 years from date and remaining in effect as long thereafter as oil or gas is produced from the land in paying quantities.
 

 The mineral leases which plaintiff seeks to have set aside have been assigned to the Shell Oil Company, Inc., which subleased the gas rights under the leases to G. C. Schoonmaker, E. P. Jarvis; and A. Mar-cell, who are also defendants herein.
 

 The property described in the leases is located in the Spider Gas Field, DeSoto
 
 *898
 
 Parish, Louisiana. Under date of December 13, 1944, the Commissioner of Conservation of the State of Louisiana issued Order No. 92, establishing 640 acres as the size of drilling and proration units for the production of gas from the Anthony sand in that field. On July 23, 1945, the Commissioner of Conservation issued Order No. 92-2, integrating, consolidating, and force-pooling all the separately owned mineral interests in Section 5, Township 11 North, Range 14 West, DeSoto Parish, for the production of gas from the Anthony sand.
 

 No well has ever been drilled on any part of the land covered by the leases, but, prior to the expiration of the primary terms of these leases and while they were in effect by virtue of the payment of delay rentals, a well producing gas in paying quantities was drilled and completed in the Anthony sand in Section 5, Township 11 North, Range 14 West. This well was located on land other than that covered by the leases which plaintiff seeks to have Can-celled and annulled, but was within the integrated, consolidated, and force-pooled unit established by Order No. 92-2, of which 240 acres of the leased premises form a part.
 

 Since plaintiff has not answered the appeal urging its alternative demand, counsel for all parties correctly concede that the only issue presented by this appeal, as stated by them, is: When an oil and gas lease covers land both within and without a drilling unit pooled by order of the Commissioner of Conservation during the primary term of such lease, and when production in paying quantities is secured while such lease is in effect by payment of delay rentals from a well within the pooled unit but not on any portion of the leased land, does such production maintain the lease in effect beyond its primary term as to the part of the land leased which lies outside such unit? Or, in other words, can a well drilled in Section 5 (not on the leased premises), producing oil or gas in paying quantities, hold that part of the land covered by the leases outside Section 5 (the unit) after the primary terms of the leases have expired?
 

 Counsel, in argument and in brief, have treated the two leases involved as one for the purpose of discussing the issue presented in this case. We shall therefore consider the issue as if only one lease were involved.
 

 Order No. 92-2 of the Commisioner of Conservation, dated July 23, 1945, after providing that all the separately owned property interests embraced in Section 5, Township 11 North, Range 14 West, are pooled, unitized, and consolidated into one unit for the production of gas, together with the liquid hydrocarbons contained therein, from the Anthony sand of the Spider Field, reads as follows: “ * * * and for all purposes of the leases and sublease contracts covering said unit in so far as the same affect the production of
 
 *900
 
 gas, together with the liquid hydrocarbons contained therein, shall be treated, developed and operated as one lease, one unit, one property and one tract; and drilling operations, drilling and production on any of the tracts included within said unit shall constitute drilling operations, drilling and production under the terms of each and every one of said leases or sublease contracts affecting the. property included within said unit. All royalties accruing under the leases and sublease contracts on all production of gas, together with liquid hydrocarbons contained therein, from the Anthony Sand shall be treated as an entirety and shall be divided among and paid to the separate owners thereof in the proportion that the acreage (mineral rights subject to the lease or sublease of each royalty or overriding royalty owner in said unit) bears to the total acreage in said unit. The payment of said royalties and overriding royalties that may be due on gas, including liquid hydrocarbons contained therein, produced from the Anthony Sand underlying said unit when made in such proportion shall be and constitute full compliance with the obligations to make any payments under all of the leases and sublease contracts affecting the property included within said unit.”
 

 Order No. 92-2 was issued under the provisions of Section 9(a) of Act No. 157 of 1940, and none of the parties to this litigation questions the validity of this order or the authority of the Commissioner to issue it, and therefore this is not an issue in the case and is not before us.
 

 Since that portion of the leased premises in Section 5 constitutes a part of one drilling and production unit and has been integrated, consolidated, and force-pooled with all the separately owned mineral interests in that section under Order No. 92-2 of the Commissioner of Conservation, plaintiff contends that the lease is in force and effect only insofar as it covers property within the boundary lines of the drilling unit (Section 5) and that the lease insofar as it covers land outside this unit, being located in Section 8 and in another unit, has lapsed.
 

 In support of this contention, counsel for plaintiff argue in brief and orally before this court that the orders of the Commissioner of Conservation had the effect of segregating that part of the lease covering land in Section 5 from that part covering land in Section 8, and that the well drilled within the primary term of the lease in the unit (Section 5), but not on the leased premises, could have .no effect on the land subject to the lease located in Section 8. They further point out that, since defendants herein have not drilled, or caused to be drilled, in Section 8 a well producing oil or gas in paying quantities within the primary term of the lease, there is no,consideration for the holding of the lease beyond its primary term insofar .as it covers property located in Section 8.
 

 
 *902
 
 It is true that the orders of the Commissioner divided the lease in the sense that a part of the property described in the lease was placed within the unit (Section 5) and the remainder of the property formed no part of this unit. But the question here presented is whether under the orders the Commissioner divided the obligation of the lease. In our opinion these orders by their provisions clearly did not divide the obligation of the lease.
 

 Order No. 92-2 specifically provides that drilling operations, drilling, and production on any of the tracts included within said unit (Section 5) shall constitute drilling operations, drilling, and production under the terms of each and every one of said leases or sublease contracts affecting the property included within the unit. Certainly the term “leases” as used in the order applies to all leases affecting property included within the unit, and applies to the leases in their entirety, and the drilling of a producing well in the unit (Section 5) within the primary term of the lease complies with the obligation to drill assumed by the lessee under the terms and provisions of the lease, and production in paying quantities from such a well constitutes production from all the property described in the lease and maintains the lease in full force and effect. .
 

 What counsel really contend by their argument that the orders of the Commissioner had the effect of segregating that past of the land in Section 5 from that part in Section 8 is that the obligation of the lease was divided by the order; for otherwise they could not be heard to say that the drilling of the well within the unit in Section 5 did not fulfill the obligation to drill in Section 8.
 

 The law is well settled that the lessee’s obligation to drill a well is indivisible in its nature, and that the grantor’s corresponding obligation to deliver the land is 'likewise indivisible, and that, if the obligation of one of the parties to the contract is to be fulfilled entirely, the obligation of the other contracting party must likewise be fulfilled in whole. Murray et al. v. Barnhart, 117 La. 1023, 42 So. 489; Cochran et al. v. Gulf Refining Company of Louisiana, 139 La. 1010, 72 So. 718.
 

 In Hardy et al. v. Union Producing Co. et al., 207 La. 137, 20 So.2d 734, and in Crichton et al. v. Lee et al., 209 La. 561, 25 So.2d 229, this court held that the production of oil or gas during the primary term of a lease from a unit established by orders of the Commissioner of Conservation maintained the lease within such unit in full force and effect beyond its primary term, and in doing so we pointed out that the lessor in such cases received the same revenue as he would have received if the well had been located on his lands, and that the lessor of any particular tract could receive' no more even if the well were drilled on the land covered by his lease.
 

 
 *904
 
 The same is true here, and this plaintiff is receiving the same royalties from the well drilled in Section 5 as it would receive if the well had been located upon the leased premises in Section 5, and there has been, in effect, since the obligation of the lease was not divided, production in paying quantities from the entire leased premises situated both in Section S and in Section 8 within the primary term of the lease, which prevents its expiration at the end of its primary term.
 

 If counsel’s argument were correct that the orders of the Commissioner of Conservation had the effect of segregating the lease, which argument we have construed to mean the division of the lease in the sense that the obligation thereunder was divided, this would mean that the orders of the Commissioner have, in effect, created two separate leases with separate obligations to drill, one covering the land in Section 5 and the other the land in Section 8. By the effect of this argument, these defendants would have been required to drill, or cause to be drilled, a well producing oil or gas in paying quantities within the primary term in the unit, Section 5, and also a well on that part of the property situated in Section 8, in order to keep the entire lease alive beyond its primary term. A further effect of counsel’s argument would be that even though the producing well in the unit (Section S) had been drilled on the land covered by the lease in this section, the drilling of such a well within the primary term would not and could not hold the lease, insofar as it covers property situated in Section 8, beyond the primary term of the lease, because performance of the obligation as to that portion of the leased premises in Section S would not satisfy the obligation as to that portion of the leased premises in Section 8, since, by the division of the lease, there would be a separate obligation as to each portion of the leased premises.
 

 Since we have concluded that the orders of the Commissioner did not divide the lease, it is unnecessary for us to consider the contention of defendants that the Commissioner of Conservation in the exercise of the police power had no authority to do so, as this issue is not before us in this case.
 

 Counsel for plaintiff contend that, since defendants herein have not drilled, or caused to be drilled, a well in Section 8 producing oil or gas in paying quantities within the primary term of the lease, there is no consideration for holding the lease as to the property described therein and located in Section 8 beyond the primary term. As plaintiff is receiving its proportionate share of the royalties produced from the well in the unit, Section 5, under Order No. 92-2, this contention presents only the question of whether the producing well drilled in the unit Section 5 is a reasonable, sufficient, and adequate development of the entire leased premises. This question likewise is not an issue in this case. It is
 
 *906
 
 true that, if the producing well in the unit is not sufficient to meet the obligation of adequate development of the property covered by the lease, the law gives plaintiff a remedy.
 

 In brief counsel for plaintiff call our attention to the fact that, just three days before the primary term of the lease expired, the Commissioner of Conservation under the police power issued Order No. 92-2, force-pooling or integrating all the lands and minerals in Section 5. Counsel concede that the Commissioner had the authority to form such a unit in order to protect and conserve the natural resources of the state under the police power, and, in the exercise of this authority, to form drilling and production units in accordance with the provisions of Act No. 157 of 1940, and that his order was valid, but they argue that he can go no further, as, for example, he can form a unit but he cannot go beyond that and say that the formation of such a unit is to have certain effect as to land not included in the unit.
 

 As we construe this argument, counsel are making an indirect attack on the order of the Commissioner, and, as we have pointed out, the validity of this order and the authority of the Commissioner to issue it are not questions before us.
 

 Counsel for plaintiff in brief state that they have not been able to find any case squarely decisive of the issue here presented, but say that the reasoning in the case of Spears v. Nesbitt, 197 La. 931, 2 So.2d 650, is most persuasive of plaintiff’s contention, if not decisive. The reasoning there has no application here, for there the court was determining the intention of the parties to a conventional pooling agreement or integrated lease. For the same reason Jackson et al. v. Hunt Oil Co., 208 La. 156, 23 So.2d 31, relied on by defendants, is not decisive of the issue.
 

 Further in support of plaintiff’s contention that the court should cancel the lease as to the lands in Section 8, or, in other words, that the lease may be divided, counsel cite and call to our attention the case of Arent v. Hunter et al., 171 La. 1059, 133 So. 157. In that case the lease covered five noncontiguous tracts, and this court cancelled it insofar as it covered four of these tracts, there being production on the fifth. This lease was cancelled as to the four tracts, not because the obligation of the lease was divisible and lessee had not performed its obligation, but because the mineral owners who had executed the lease had lost their mineral interests by prescription liberandi causa, and it followed that the lease granted by these mineral holders would no longer be in force and effect as to these four tracts. This case, therefore, is not authority for the proposition that a lease may be divided.
 

 For the reasons assigned, the judgment appealed from is reversed, and it is ordered that plaintiff’s demands be rejected and its suit dismissed at its costs.