MOISE, Justice.
 

 The pleadings disclose that this is a suit brought by the Eota Realty Company, Inc., as owners of a certain tract of land in Rapides Parish, which seeks the cancellation of an oil, gas and mineral lease, dated September 19, 1940, which allegedly is past its primary term and which lease is claimed by defendants, Carter Oil Company and Phillips Petroleum Company. There was judgment in the district court cancelling the lease. Defendants have appealed.
 

 The stipulation of fact discloses that on September 19, 1940, the Eota Realty Company, Inc. entered into an oil, gas and mineral lease with K. Hughes. This lease covered approximately 6,526 acres, but the controversy, as shown by the pleadings, relates to two non-contiguous tracts of land,
 
 *793
 
 ■one containing 1,500 acres and the other 200 acres. '
 

 H. M. Marr and Union Producing Company are the present assignees of the lease covering the 200 acre tract of land on which there is a producing well. Carter Oil Company and Phillips Petroleum Company are the owners of the lease covering the 1,500 acre tract, and for a period of ten years, production has not been secured. The Eota Realty Company, Inc. prevailed in the district court in having the 1,500-acre lease ■cancelled. From the stipulated facts of record, we obtain the information that the 200-acre tract and the 1,500-acre tract are the controversial issues in the suit.
 

 The pertinent provisions of the lease are sections four and seven. Section four .reads in part:
 

 “* * * Lessee, or any assignee hereunder, may at any time execute and deliver to lessor, or to the depository above named, or place of record, .a release or releases covering any portion or portions of the premises held by him, and thereby surrender this lease as to such portion or portions, and thereafter the rentals payable by him shall be reduced proportionately.”
 

 .Section seven reads:
 

 “In case of cancellation or termination of this lease from any cause, lessee shall have the right to retain, under the terms hereof, around each well producing, being worked on, or drilling hereunder one hundred sixty (160) acres around each such well in as near a square form as practicable, and in the event lessor considers that operations are not being conducted in compliance with this contract, lessee shall be notified in writing of the facts relied upon as constituting a breach hereof and lessee shall have sixty (60) days after receipt of such notice to comply with the obligations imposed by virtue of this instrument.”
 

 These two above provisions are a part of the agreement and should be persuasive when applying the law to the facts of the case.
 

 On January 24, 1951, attorneys for the Eota Realty Company, Inc. wrote to the Carter Oil Company and Phillips Petroleum Company a letter containing the following paragraphs:
 

 “Eota Realty Company has instructed us to demand that you commence the drilling of a well in search of oil or gas on some part of the lands above described within thirty (30) days from this date, and thereafter to continue with the drilling of such well to the depth from which oil is produced in the Big Island Field, Rapides Parish, Louisiana, and thereafter, not with more than thirty (30) days elapsing between the completion or abandonment of one well and the commencement of operations for the drilling of another well, to continue with the development of
 
 *795
 
 the lands upon which you claim the above referred lease until such lands which have been reasonably and adequately developed for the production of oil and gas.
 

 '“Failing compliance by you with demand of Eota Realty Company for further development as above set forth, we are instructed and authorized by our client to institute suit for the cancellation of the lease claimed by you.”
 

 On February 14, 1951, Carter Oil Company informed attorneys for the Eota Realty Company that:
 

 “With all of the information which we have been able to assemble up to this time, it is our belief that a reasonably prudent operator would not now drill any additional wells on the acreage in question.”
 

 Phillips Petroleum Company replied on February 23, 1951 requesting an additional period of thirty days for the commencement of actual drilling operations. Carter Oil Company likewise replied and stated that it did not believe that a well drilled on any portion of the leased land would result in paying production. On March 1, 1951, attorneys for Eota Realty Company again addressed the defendants by mail and stated:
 

 “* * * we wish to advise that the time within which you are demanded by The Eota Realty Company to commence the drilling of a well on some part of the lands described in our letter is extended from thirty (30) days to sixty (60) days from January 26, 1951, which is the date upon which you received our letter of January 24.”
 

 From the extension of the time granted in this letter, we believe that it is possible that plaintiff read Section 7 of the lease ■contract and thereupon extended the time limit thirty (30) additional days in order to make a full term of sixty days as provided in the lease.
 

 On March 28, 1951, attorneys for Eota Realty Company refused a further extension of time and stated in a letter to Phillips Petroleum Company:
 

 “* * * We, therefore, advise that in view of the fact that you have failed to comply with our demand for development, request is hereby made that you furnish to The Eota Realty Company, within ten (10) days a duly executed and recordable release of the oil and gas lease referred to in our letter of January 24, 1951 insofar as it covers the lands described in our said letter.”
 

 This letter conformed with the provisions of LSA-Revised Statutes 30:102 which we shall discuss later.
 

 On April 7, 1951, Eota Realty Company wrote Carter Oil Company and Phillips. Petroleum Company refusing to withdraw its demand for a release of the oil and gas lease, and suit for cancellation, was filed on April 9, 1951.
 

 
 *797
 
 Exceptions of improper cumulation of demands were sustained by the trial court. Plaintiff amended. Exceptions of no cause or right of action were overruled. The plea of estoppel was evidently referred to the merits.
 

 Appellants contend that the district court erred in ordering the cancellation of the oil, gas and mineral lease as to only a part of the land covered and leaving the same in force as to another part of it.
 

 The case of Le Blanc v. Danciger Oil
 
 &
 
 Refining Co., 218 La. 463, 49 So.2d 855, 857, relied on by defendants, involved a lease for a primary term of three years. Part of the leased land was assigned by the Commissioner of Conservation to form part of a forty-acre drilling unit. Plaintiff sued to have his lease cancelled insofar as it affected the land outside of the drilling unit. The following pronouncement of the decision shows the law ■of the case:
 

 “The allegations of plaintiff’s petition setting forth the claim that he is entitled to a cancellation of the lease because of the nondevelopment thereof, in the absence of any pleaded facts from which such a conclusion can be drawn and particularly when considered in the light of his allegations that two producing wells have been drilled ■on the property since the termination of the primary term of the lease, states no cause of action; and since petitioner fails to allege he placed the lessee in default * * * his petition states no right of action.”
 

 Hunter Co. v. Shell Oil Co., 211 La. 893, 31 So.2d 10, is used as an authority by defendants. This case involved the cancellation of a lease on non-productive lands, but lands within an integrated, consolidated and force-pooled unit established by the Commissioner of Conservation.
 

 The Commissioner’s order read “that drilling operations, drilling, and production on any of the tracts included within said unit (Section 5) shall constitute drilling operations, drilling, and production under the terms of each and every one of said leases or sublease contracts affecting the property included within the unit.”
 

 The Court in the Hunter case, supra [211 La. 893, 31 So.2d 13], held that:
 

 “The law is well settled that the lessee’s obligation to drill a well is indivisible in its nature, and that the grantor’s corresponding obligation to deliver the land is likewise indivisible, and that, if the obligation of one of the parties to the contract is to be fulfilled entirely, the obligation of the other contracting party must likewise be fulfilled in whole.”
 

 However, we must consider the issue for decision as found by the Court, or we will have a structural ruling without an equilibrium, and the different parts thereof will not balance. The Court stated the issue as follows:
 

 
 *799
 
 “When an oil and gas lease covers land both within and without a drilling unit pooled by order of the Commissioner of Conservation during the primary term of such lease, and when production in paying quantities is secured while such lease is in effect by payment of delay rentals from a well within the pooled unit but not on any portion of the leased land, does such production maintain the lease in effect beyond its primary term as to the part of the land leased which lies outside such unit? Or, in other words, can a well drilled in Section 5 (not on the leased premises), producing oil or gas in paying quantities, hold that part of the land covered by the leases outside Section 5 (the unit) after the primary terms of the leases have expired?”
 

 In the case of Cochran v. Gulf Refining Co. of Louisiana, 139 La. 1010, 72 So. 718, which was a succession matter, a contiguous tract of land was involved. This Court held that one who accepts a succession unconditionally is
 
 bound by the contract of lease granted by the one from whom he inherits.
 
 By dividing the land into four lots, the heirs could not affect the lease taken for the whole. The heir to land could not prevail in a suit for the cancellation of a lease that affected her part of the property. Certainly, under these circumstances, the lease was indivisible, and the grantor’s obligation to deliver the land was likewise indivisible. (Italics ours.)
 

 The case of Nabors v. Producers’ Oil Co., 140 La. 985, 74 So. 527, L.R.A.1917D, 1115, cited by the defendants, involved the question of whether a lease was joint or severable, and our Court held that where several lessors or grantors dispose of the mineral rights on several tracts of land for a gross price, without stating the
 
 amount paid to each grantor and without stating or designating the area of land belonging to each grantor a joint obligation was created.
 
 (Italics ours.)
 

 The case of Murray v. Barnhart, 117 La. 1023, 42 So. 489, was a case where four suits were filed; three by the heirs of E. J. Pitts, and one by the assigns of another heir. The Court rightfully consolidated the suits and held that “The obligation to complete one well is indivisible in its nature, and, as a necessary consequence, the corresponding obligation to deliver the land is also indivisible; since,, naturally, if the whole of one side of a contract be fulfilled, the whole of the other side must likewise be fulfilled.”
 

 None of the above cited cases relied on by defendants as authority for their plea, that an oil, gas and mineral lease is indivisible are applicable for the reason that the instant case is governed by the facts, and contract recited supra. H. M. Marr and Union Producing Company, the present assignees of the lease covering the 200 acres on which there is a producing-well, have not been disturbed, and the Carter Oil Company and Phillips Petroleum.
 
 *801
 
 Company, owners of the lease covering the 1,500-acre tract, have not secured production for a period of ten years. These facts coupled with the contract and the law should govern the decision in this case.
 

 Article 1901 of the LSA-Civil Code prescribes:
 

 "Agreements legally entered into have the effect of laws on those who have formed them.”
 

 Article 1963 of the LSA-Civil Code states:
 

 “When the intent of the parties is evident and lawful, neither equity nor usage can be resorted to, in order to enlarge or restrain that intent, nor can any law operate to that effect, unless it be some prohibition or other provision, which the parties had no right to modify or renounce.”
 

 In the case of Carter v. Arkansas Louisiana Gas Co., 213 La. 1028, 36 So.2d 26, this Court considered a similar oil, gas and mineral lease and upheld its cancellation in part.
 

 The correspondence, in the instant case, between lessor and lessees shows that on January 24, 1951, demand was made for development in accordance with the ruling of Brown v. Sugar Creek Syndicate, 195 La. 865, 197 So. 583. Carter Oil Company was of the opinion that drilling would not be feasible, and Phillips Petroleum Company requested extensions of time. On March 1, 1951, Eota Realty Company corn-plied with the provisions of Section 7 of the oil, gas and mineral lease by extending its original request granting thirty days for development to sixty days from receipt of the letter of Jan. 24, 1951.
 

 As we said in Carter v. Arkansas Louisiana Gas Co., supra [213 La. 1028, 36 So.2d 28] :
 

 “The law of this state is well settled that the main consideration of a mineral lease is the development of the leased premises for minerals, and that the lessee must develop with reasonable diligence or give up the contract * * »
 

 In the instant case, the lessees failed to sufficiently develop the 1,500-acre tract. After making demand, there was no necessity for formal default.
 

 It is urged in supplemental brief filed by the defendants that they were not put in default. Articles 1931 and 1933 of the LSA-Civil Code and the cases of Pipes v. Payne, 156 La. 791, 101 So. 144, and Temple v. Lindsay, 182 La. 22, 161 So. 8, are cited as authorities for the necessity of placing defendants in formal default-
 

 The cases are not apposite. In Temple v. Lindsay, supra, the contract for drilling was not for a definite term. Defendant was not put in default by the terms of the contract. In the case of Pipes v. Payne, supra, this Court stated that demand had not been made for development. In the
 
 *803
 
 present suit, the demand for development was urgent and insistent.
 

 The case of Stockelback v. Bradley, 159 La. 336, 105 So. 363, 364, is applicable where it was held:
 

 “It is well settled that where a party refuses, and does not merely fail or neglect, to comply with his obligation, the other party need not formally put him in default. No one is required to do a vain and useless thing.”
 

 Appellee has set forth valid reasons why it is not demanding the cancellation of the lease with respect to the forty acres adjoining the 160 acres developed by H. M. Marr and Union Producing Company. It has complied with its contract by granting to lessees 160 acres, and if it wishes to grant them an additional 40 acres, appellants have no right to complain.
 

 LSA-Revised Statutes 30:102 prescribe:
 

 “Whenever an optional oil or gas lease shall lapse because of the termination of the full period within which it may be kept alive by the payment of rentals, or because of failure on the part of the lessee to comply with the condition for the prevention of forfeiture, the lessee shall within ten days after written demand on the part of the lessor furnish the lessor with an acknowledged instrument, directing the cancellation of the lease on the records.
 

 “If a lessee, having been given written notice demanding cancellation of the lease, fails or refuses to comply within ten days, he shall be liable to the lessor for a reasonable attorney’s fee incurred by the lessor in bringing suit to have the cancellation adjudged. He shall also be liable to the lessor for all damages suffered by him by reason of his inability to make a lease because of the non-cancellation.”
 

 On March 28, 1951, plaintiff gave defendants ten days in which to furnish it with a release in conformity with the above statute. Appellants- -failed to comply with plaintiff’s demand, and this failure of performance made them liable under the terms of the statute for attorney’s fees. However, we feel that the attorney’s fees as fixed are excessive and believe that the sum of $4,500 would be just, fair and reasonable. In reaching this conclusion, we have examined the record and have taken into consideration the testimony given on the subject matter.
 

 For the reasons assigned, the judgment of the trial court fixing the attorney’s fees at $7,000 is reduced to $4,500, and the judgment ordering the cancellation of the lease granted by Eota Realty Company to K. Hughes and assigned to defendants insofar as it covers the described 1,500 acres of land is affirmed. Costs to be paid by defendants.
 

 Amended and affirmed.