76 So.2d 111 (1954)
L. H. NUNLEY, Plaintiff-Appellant,
v.
SHELL OIL COMPANY et al., Defendant-Appellee.
No. 8219.
Court of Appeal of Louisiana, Second Circuit.
October 29, 1954.
Rehearing Denied December 10, 1954.
Writ of Certiorari Granted February 14, 1955.
Colvin & Hunter, Mansfield, for appellant.
Blanchard, Goldstein, Walker & O'Quin, Shreveport, for appellee.
HARDY, Judge.
This is a suit in which plaintiff seeks the cancellation of an oil and gas lease with reference to a portion of a tract of land in which he is the owner of the fee and of an undivided interest in the minerals. The entire tract of land covered by the lease consists of 84 acres, of which 44 acres comprise a portion of a 640-acre drilling unit established under orders of the State Department of Conservation governing the production of gas from the Anthony sand and the Pettit zone horizons in what is known as the Spider Field of DeSoto Parish. In this action plaintiff seeks the release of the remaining 40 acres on the ground of non-development. On trial it was stipulated that the rights of Shell Oil Company *112 as lessee, named as one of the defendants, had been acquired in their entirety by the Vanson Production Corporation, and, accordingly, a judgment of nonsuit was entered as against the Shell Oil Company. After trial there was judgment in favor of defendant rejecting plaintiff's demands, from which plaintiff prosecutes this appeal.
The original lease, under which defendant claims, was executed on July 30, 1935, and was subsequently amended for the purpose of correcting the description of the property covered thereby. The primary term was fixed at a period of ten years and the instrument of lease contained a reservation in favor of lessee of 25 acres around each well in the event of cancellation or termination of the lease for any cause.
In his petition plaintiff alleged that a well drilled on a unit comprising the 40 acres sought to be released would be productive of oil and gas, and, as ground for this belief, asserted that an offer had been made to drill a well on a unit comprising this acreage and that a formal demand for development or, in the alternative, cancellation and release thereof had been made upon defendant, which demand had been refused. The petition included a demand for attorney's fees in the event of rendition of judgment ordering cancellation. By stipulation the fees were fixed at $500 for the trial services and $500 in event of an appeal.
On trial of the case it was shown that no well had ever been drilled on the 84 acres comprising the leased premises; that the primary term of the lease expired July 30, 1945; that by order of the Department of Conservation of the State of Louisiana issued July 23, 1945, 44 acres of the tract had been pooled, integrated and unitized for the production of gas and condensate from the Anthony sand of the Spider Field in DeSoto Parish, Louisiana, as a part of a 640 acre unit; that subsequently a well was drilled on the said unit (but not on the leased premises), resulting in the production of gas in commercial quantities, which gas at the time of suit was being marketed by defendant, Vanson Production Corporation; that plaintiff had received a bona fide offer of $10 per acre and $25 per acre out of production for a lease on the 40 acres which was proposed to be incorporated in a drilling unit, provided plaintiff should be successful in procuring the release or cancellation of the existing oil and gas lease thereupon.
Defendant filed an exception of no cause or right of action which, by consent, was referred to the merits, but the grounds for which were again urged in the answer and have been reiterated in the hearing and brief on this appeal. The exception is based upon the contention that plaintiff's action is an attempt to cancel an indivisible oil and gas lease insofar as it affects only a portion of the leased land.
On the merits defendant urges that: "* * * a reasonably prudent operator would not have drilled upon the plaintiff's property to any formation now known to be productive in the area."
Additional established facts bearing upon the enumerated defenses reveal that defendant's geologist, who testified on trial on behalf of defendant, was of the firm opinion that the 40-acre tract sought to be released by this action would be wholly unproductive with reference to development in the Anthony sand or the Pettit zone, the two known producing horizons in the Spider Field, with the possible exception of one acre out of the 40 acres involved; that plaintiff had received a bona fide offer of lease on the 40 acres from one J. W. Caraway, President of the Mansfield Bank & Trust Company, who had occupied such position for a period of seven years, who had previously been connected with the Bank of Logansport, also in DeSoto Parish, over a period of nineteen years, and who had engaged in the buying, selling and development of leases in DeSoto Parish for a period of some twenty years.
Proceeding first to a discussion of defendant's exception of no cause and no right of action, we unreservedly concede *113 the correctness of counsel's argument that the Supreme Court of our state has established the general rule that an oil and gas lease is an indivisible obligation, with respect to which a lessor has no right to demand the forfeiture and cancellation of a part of the leased premises; Hunter Company, Inc. v. Shell Oil Company, Inc., 211 La. 893, 31 So.2d 10, 11, and cases therein cited. Consideration of the Hunter case further conclusively indicates that the majority of our Supreme Court affirms the position that the issuance of a pooling order by the proper conservation authority does not constitute a division of an indivisible obligation and does not justify the cancellation at the instance of the lessor of a portion of the leased premises which lies outside the established unit. The further effect of the holding in the Hunter case is that the drilling of a well on any portion of the pooled unit, though not on any part of the leased premises, is a compliance with the drilling obligation of a lease, if performed within the primary term, which is sufficient to maintain the lease in effect beyond the primary term.
However, we do not construe the holding of the Hunter case as being so extensive in scope and nature as is contended by counsel for defendant. It is important to observe that the action of the plaintiff lessor in the Hunter case was predicated on the ground specifically set forth in the opinion of Mr. Justice Hawthorne:
"* * * that the primary terms of both leases had expired without a well's having been drilled on that portion of the leased premises."
The leases to which reference was made embraces a total of 400 acres, of which 240 acres had been force pooled by order of the Commissioner of Conservation. Plaintiff's action sought to cancel the leases, with reference to the 160 acres excluded from the pooling and unitization order, on the ground above stated.
The court's opinion made the following pronouncement:
"The law is well settled that the lessee's obligation to drill a well is indivisible in its nature, and that the grantor's corresponding obligation to deliver the land is likewise indivisible, and that, if the obligation of one of the parties to the contract is to be fulfilled entirely, the obligation of the other contracting party must likewise be fulfilled in whole."
The court further stated that inasmuch as the obligation of the lease was undivided, any production "* * * within the primary term of the lease * * * prevents its expiration at the end of its primary term."
The facts involved in Le Blanc v. Danciger Oil & Refining Company, 218 La. 463, 49 So.2d 855, 857, in our opinion, remove it from any analogy to the case here under consideration. In the Danciger case the pleaded facts, accepted on the basis of the exception of no cause or right of action, conclusively showed that the action sought the cancellation of a portion of a lease lying outside of an integrated drilling unit despite the fact that a well on the unit had been drilled within the primary term of the lease, and that two additional producing wells were drilled on plaintiff's acreage after the termination of the primary term of the lease.
In the Le Blanc case the opinion of Mr. Chief Justice Fournet reiterated the holding that the lessee's obligation to drill a well is indivisible in its nature and is fulfilled by the drilling of a well on a pooled unit both with respect to leased land within the unit and that portion lying outside the unit. The court further held:
"The allegations of plaintiff's petition setting forth the claim that he is entitled to a cancellation of the lease because of the nondevelopment thereof, in the absence of any pleaded facts from which such a conclusion can be drawn and particularly when considered in the light of his allegations that two producing wells have been drilled on the property since the termination of the primary term of the lease, states no cause of action; and since petitioner fails to allege he placed the lessee in *114 default in this respect, his petition states no right of action." (Emphasis supplied.)
Contrary to the above recited facts it is clearly established in the instant case that there has been an absolute refusal on the part of defendant to engage in any development and, further, that plaintiff has formally placed defendant in default. It is evident therefore that defendant's exception should be overruled.
On the merits, as observed by counsel for defendant, the issue concerns purely a question of fact, that is, whether a reasonably prudent operator could be required to drill upon the property sought to be released to the depth of any formation known to be productive in the general area.
Plaintiff relies upon the case of Carter, v. Arkansas Louisiana Gas Company, 213 La. 1028, 36 So.2d 26, 29. In the cited case plaintiffs prayed for the cancellation of a lease on the ground that defendant was guilty of disregarding and breaching the obligation implied in the lease requiring the reasonable and sufficient development of the land with reasonable diligence. The relief was granted. The facts involved were remarkably similar to those existing in the present case, differing primarily in that the acreage involved was considerably more extensive and, further, that the unitization and allocation of production then in effect was the result of voluntary agreement rather than conservation regulations.
The opinion by Mr. Justice Hawthorne commented on the proposition that the law of the state is well settled to the effect that the primary consideration of a mineral lease is the development of the property; that a lessee is required to develop with reasonable diligence or surrender his rights and that determination of development and reasonable diligence on the part of a lessee is measured by the application of the rule of ordinary prudence under similar circumstances and conditions and with due regard for the interests of both contracting parties. The court then stated the determination of the issue of reasonable diligence and ordinary prudence to be a question of fact dependent upon the circumstances of each particular case.
In the cited case, as in the instant case, defendant relied principally upon the advice of its geologist who opposed further development on the ground that the property sought to be released was unlikely to produce. In reaching the conclusion that the defendant had failed to sufficiently develop the leased property the court made the following declaration:
"* * * the reasons by which defendant attempts to justify its refusal to develop the property further are not adequate and sufficient, especially in view of the fact that another competent and well qualified producer is willing to drill".
The opinion quoted with approval and acceptance the following quotation from Sauder v. Mid-Continent Petroleum Corporation, 292 U.S. 272, 54 S.Ct. 671, 674, 78 L.Ed. 1255, 93 A.L.R. 454:
"`The justification for the respondent's position is that the geologic data and the experience upon surrounding lands are both unfavorable to the discovery of oil or gas upon the east half of section 16 (the 320 acre tract). The respondent's officers state that they desire to hold this tract because it may contain oil; but they assert that they have no present intention of drilling at any time in the near or remote future. This attitude does not comport with the obligation to prosecute development with due regard to the interests of the lessor. The production of oil on a small portion of the leased tract cannot justify the lessee's holding the balance indefinitely and depriving the lessor, not only of the expected royalty from production pursuant to the lease, but of the privilege of making some other arrangement for availing himself of the mineral content of the land.'"
The rule set forth in the Carter case to the effect that the main consideration of a mineral lease is the development of leased *115 premises was reiterated in the recent case of Eota Realty Co., Inc. v. Carter Oil Co., 225 La. 790, 74 So.2d 30, in which the cancellation of the lease on a portion of the property covered thereby was sustained on the ground of failure of development. The opinion ably discusses the cases above cited and others involving the issue.
In the case before us it is clear that defendant's opposition to further development and its claim to the status of a prudent operator in connection with this matter, are based upon the professional opinion of a consulting geologist who testified in defendant's behalf. This witness testified that in his opinion the 40-acre tract sought to be released would be completely unproductive in the Anthony and Pettit zone with the possible exception of one acre thereof. With due deference to the qualifications, standing and ability of the witness, we question whether this testimony in and by itself is sufficient to serve as absolutely definitive of the obligation of a prudent operator under the circumstances. Geology is not an exact science, and it is a matter of common knowledge that geologists are subject to error with reference to their professional conclusions just as are doctors, lawyers and practitioners of other professions, no matter how qualified by training and experienced in practice they may be. Dry holes sometimes embarrassingly result from the soundest and most optimistic geological expectations. And, conversely, many oil producing areas today were developed in the very teeth of adverse geological advice.
As opposed to the single fact of an unfavorable geological prognosis, we are confronted with an even more persuasive fact introduced in support of plaintiff's position. The record incontrovertibly establishes the fact that a bona fide offer of lease involving the payment of a cash consideration and the contingent accrual of an additional sum was made to plaintiff by a banker who was also a dealer in leases in the area. This offer further provided for an obligation on the part of the prospective lessee to drill a well.
There is no showing in the record that the individual who made the above offer to plaintiff was not a reasonable and prudent operator. This individual's experience as a banker would indicate that he was by nature and vocation inclined to the exercise of those attributes of prudence and conservative practices which are customarily associated with the practice of banking.
Nor do we think it of material importance to note from the record that a well drilled subsequent to the filing of this suit was unproductive, in view of the fact that the location of the well was some quarter of a mile more or less from plaintiff's land. The importance of this factor is further minimized by the admission of defendant's expert geological witness that some part of the property upon which plaintiff seeks release appears to be in a productive area.
Counsel for plaintiff has argued that defendant in this case has no valuable interest at stake since its failure to develop indicates its belief that the leasehold rights are worthless. This argument is answered by counsel for defendant with the contention that defendant regards its rights as things of value in that, inter alia, the lease confers privileges of laying pipelines, etc., and further, that the property may at some time in the future become valuable by reason of the discovery of production from another formation. We do not consider either of these arguments to be material. The value of the lease and the rights granted thereunder is an unimportant collateral issue since all rights of the lessee must be determined on the basis of its compliance, vel non, with the obligations provided in the lease, in this instance the prudent and reasonable development of the leased premises.
Under the facts related, we are convinced that plaintiff has adequately established his right to a cancellation of the lease on the ground of nondevelopment.
For the reasons assigned the judgment appealed from is reversed and set aside and it is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, *116 L. H. Nunley, and against defendant, Vanson Production Corporation, cancelling that certain oil and gas lease originally executed by J. P. Simmons in favor of J. V. Cline, dated July 30, 1935, as amended by instrument executed by J. P. Simmons in favor of Shell Petroleum Company of date April 10, 1936, to such extent and insofar as the said described agreements of lease cover and affect that certain tract of land located in DeSoto Parish, Louisiana, described as being the Northwest Quarter of Southeast Quarter of Section 11, Township 11 North, Range 14 West.
It is further ordered, adjudged and decreed that there be judgment in favor of plaintiff, L. H. Nunley, and against defendant, Vanson Production Corporation in the full sum of $1,000 as attorney's fees, together with all costs.