168 So.2d 435 (1964)
J. Nicholas SELLERS et al., Plaintiffs-Appellees,
v.
CONTINENTAL OIL COMPANY et al., Defendants-Appellants.
No. 1253.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1964.
*436 Davidson, Meaux, Onebane & Donohoe, by Lawrence E. Donohoe, Jr., Lafayette, for defendants-appellants.
Broussard & Broussard, by Marcus A. Broussard, Abbeville, for plaintiffs-appellees.
Liskow & Lewis, by Austin W. Lewis, New Orleans, amici curiae on behalf of defendants-appellants.
Before TATE, FRUGÉ, HOOD SAVOY and CULPEPPER, JJ.
FRUGÉ, Judge.
This is a suit brought by four of five lessors seeking cancellation of a mineral lease for reason of nonpayment of royalties. The trial judge, having found in favor of plaintiffs, rendered judgment cancelling the entire lease and awarding plaintiffs attorney's fees in the amount of $2,000. Defendants, Continental Oil Company, as owner of the lease, and Thomas McDermott and Hellenic Oil & Gas Company, as owners of overriding royalty interests, have taken this appeal. Third party defendant John Sellers, a co-lessor who had refused to join in the suit with plaintiffs, has not appealed the judgment.
The facts of this case are not in dispute, a rather lengthy stipulation having been agreed upon by the parties. The following is a condensed version of these facts:
On May 11, 1946, plaintiffs J. Nicholas Sellers, Alphonse J. Sellers, J. Gabriel Sellers and Josephine Sellers, along with their brother John Sellers, a third party defendant in this suit, executed as lessors a mineral lease on a contiguous tract of land in Vermilion Parish comprised of approximately 121.46 acres. As a result of partial releases by the lessee, the acreage affected by the lease was reduced to two non-contiguous tracts, one of approximately 11.28 acres and the other of approximately 12.218 acres. Through mesne conveyances, the lease was acquired by Continental Oil Company as lessee.
The lease is on a standard form and provides for a royalty of one-eighth payable to the lessors. The lease does not fix a time certain for payment of the lessors' royalty.
All of the acreage affected by the Sellers lease has been included within units established by the Louisiana Department of Conservation, the 12.218 acre tract and the 11.28 acre tract being in separate units. Although no wells were located directly on the Sellers land, there was continuous production from the units in paying quantities from July, 1949, to the time of trial of this suit.
The lessors were paid all royalties to which they were entitled as a result of *437 production from the 11.28 acre tract, as well as all royalties to which they were entitled from all acreage which was subsequently released by the lessee. These payments totaled $9,301.10.
The 12.218 acre tract was included in the unit designated as "J. N. Sellers Unit for the Third Duhon Sand." Production from this unit began in October of 1957 and continued until December of 1961. Royalties due plaintiffs from production of this unit were not tendered prior to June 23, 1960, when plaintiffs, through their attorney, demanded a release of the Sellers lease. On July 11, 1960, payment for production attributable to the 12,218 acre tract was tendered plaintiffs, which tender was refused. The royalty due the co-lessor John Sellers from the 12.218 acre tract was timely paid.
Plaintiffs at no time made formal or informal demand for payment of royalties due them from the 12.218 acre tract. Division orders were mailed to plaintiffs by defendant, Continental Oil Company, in September of 1958 but were neither signed nor returned. Again in April of 1960 division orders were sent to plaintiffs and were neither signed nor returned by them.
Plaintiffs, in seeking cancellation of the mineral lease, have relied on the cases of Melancon v. Texas Company, 230 La. 593, 89 So.2d 135; Bailey v. Meadows, La.App., 130 So.2d 501, 502 (2 Cir.); and Pierce v. Atlantic Refining Company, La.App., 140 So.2d 19. Alternatively, plaintiffs seek cancellation of the lease as it affects only the 12.218 acre tract should the court find that they are not entitled to cancellation of the entire lease.
Defendants urge strongly that factual differences exist in this suit that make the cases of Melancon, Bailey and Pierce inapplicable. Defendants particularly urge that here there was no evidence of bad faith and that defendants would have paid the royalty had it been demanded. Defendants also point out that here there was full payment of royalty to the plaintiffs on all but one producing unit and that here the entire conduct of defendants only amounted to a passive breach of the lease.
We answer these contentions proffered by defendants by referring to our decision in Pierce v. Atlantic Refining Company. There we emphasized the following quotation from the Bailey case:
"We are, therefore, of the opinion that the Melancon and Bollinger cases have enunciated a general rule that failure to pay production royalties under an oil and gas lease, for any appreciable length of time, without justification, amounts to an active breach of such lease which entitles the lessor to a cancellation thereof without the necessity of placing the lessee in formal default."
No explanation of defendants' failure to pay the lessors' royalties has been presented to this court. Here there was a failure to pay the royalties for a period of thirty-three months; that defendant, Continental Oil Company, knew the royalties were due plaintiffs seems beyond question in view of the fact that they were paying full royalties to John Sellers, one of the co-lessors. We are therefore unable to find that the failure to pay the royalties was justified. We do not view this court's decision in Fawvor v. U. S. Oil of Louisiana, La.App. 3 Cir., 162 So.2d 602, as conflicting with our decision in the present case. In the Fawvor case we found that under all of the circumstances the delay in paying the royalties was justified.
Defendants argue that plaintiffs ratified the lease on March 25, 1959, by entering into a compromise agreement providing for a partial release of the lease by the lessees. It is stated in that agreement, "said lessors, their successors and assigns, further ratify the described lease and do stipulate and agree that said lease is in full force and effect as to the retained acreage * * *."
*438 We will arguendo assume that the lease was effectively ratified by plaintiffs as of March 25, 1959. However, no tender of payment was made as to the royalties due from the 12.218 acre tract until July of 1960, a period of about sixteen months. Therefore, even if it is assumed that plaintiffs ratified the lease in March of 1959, there was still an unexplained delay of sixteen months in which the lessors received no royalty from their land included within a producing unit.
Defendants contend that plaintiffs further ratified the lease by entering into later agreements on August 8, 1960, and by a letter dated January 11, 1961. However, both of these agreements contain the provision, "It is understood and agreed that this amendment shall in no way affect or prejudice either party's rights with the respect to the current dispute relative to that portion of the lease located in Section 65 which is located in Union Texas Natural Gas Corporation's Sellers Unit."
This proviso clearly indicates that no ratification was intended. We find no merit to defendants' argument that this was an attempt to split a cause of action, which is prohibited by law. The cases cited by defendants, Thompson v. Kivett and Reel, Inc. La. App., 25 So.2d 124, and Williams v. Marionneaux, 240 La. 713, 124 So.2d 919, are inapposite.
We find that the trial judge was not in error in holding that the plaintiffs were entitled to the remedy of cancellation. We do, however, believe that the trial judge was erroneous in concluding that the entire lease must be cancelled. The trial judge was of the opinion that the decision in the case of Hunter Co. v. Shell Oil Company, Inc., 211 La. 893, 31 So.2d 10, requires that if a mineral lease is to be cancelled, it must be cancelled in its entirety. We view Hunter Co. v. Shell Oil Company, Inc., as only establishing a general rule of the indivisibility of mineral leases and not as precluding the courts from granting partial cancellation in appropriate cases. Eota Realty Co. v. Carter Oil Company, 225 La. 790, 74 So.2d 30; Nunley v. Shell Oil Company, La.App. 2 Cir., 76 So.2d 111; Cutrer v. Humble Oil & Refining Co., 202 F.Supp. 568.
Under the facts of this case, there having been full payment of royalty due the plaintiffs from the 11.28 acre tract, we find that cancellation of the lease as to this tract was inappropriate.
In applying rigidly the general rule of indivisibility, the trial judge cancelled the lease as to the one-fifth mineral interest of John Sellers. In so doing, the trial judge erred. John Sellers had not joined as a party plaintiff seeking cancellation of the lease. At the trial on the merits it was established by John Sellers' own testimony that he had been paid his full royalties and had no basis for complaint. It is true that in the Melancon case the court cancelled the lease as to all persons having an interest. However, the facts of that case show that the lessee had not paid royalties to any of the owners of mineral interests.
Finally, defendants assert that the trial judge abused his discretion in granting a partial new trial for purposes of allowing plaintiffs to establish the amount of reasonable attorney's fees to which they were entitled. We find no merit in this contention. It is well settled that the trial judge has wide discretion in the granting of a new trial. LSA-Code of Civil Procedure, Art. 1973.
For the reasons assigned in this opinion we find the trial judge erred in cancelling the lease on the 11.28 acre tract and in cancelling the lease as to the one-fifth mineral interest of John Sellers. We affirm the judgment insofar as it orders cancelled and erased from the public records the lease as it pertains to the interest of plaintiffs in the 12.218 acre tract.
Amended and affirmed.