BARNETTE, Judge.
This suit began as a simple action by plaintiffs to recover the sum of $800 deposited by defendant with a real estate broker pursuant to a contract of sale and purchase of property. The sale was not consummated, and long after the expiration of the date for the act of sale to be passed, the real estate broker returned the deposit to the intended purchaser, the defendant herein. The plaintiffs brought this suit against the defendant for recovery of the $800, alleging it to be due them as a forfeiture under the terms of the contract. Suit was filed June 2, 1965 and finally called for trial on November 28, 1968; judgment was rendered January 22, 1969. In the interim numerous pleadings were filed including three supplemental petitions, third-party petitions, reconventions and exceptions. What began as a simple suit developed into a complicated procedural conflict. Judgment was rendered dismissing plaintiffs’ suit, the third-party demands and the reconventional demands, and decreed that each litigant pay his respective costs. From this judgment the plaintiffs appealed.
On September 5, 1963 the defendant, Lu-cious Thompson, made an offer to purchase property described as “9111 Prit-chard Street” for $8,000 “all cash”. The offer was made on a printed realtors combination “agreement to purchase or sell” form bearing the stamp of J. W. Strough-ter, licensed real estate broker, and contained the following pertinent provisions:
“Act of Sale to be passed before Lender’s Notary, on or prior to November 5, 1963 at expense of purchaser.
“If this offer is accepted, purchaser must deposit with seller’s agent immediately in cash 10% of purchase price amounting to $800.00.

“The seller shall deliver to purchaser a merchantable title.
“In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to declare the deposit, ipso facto, .forfeited, without formality beyond tender of title to purchaser; or the seller may demand specific performance.”
The acceptance of the purchase offer is indicated by the signatures of the plaintiffs, Mrs. Stella Reeder and Emile Johnson. The purchaser deposited with the real estate broker, Stroughter, not $800 as required but $1,000.
The property in question had been owned by Fannie Jackson Johnson Robinson who died in 1961. She left a will by the terms of which the plaintiffs were to inherit the property in question. The succession proceedings, filed in evidence in this suit, reveal that “Mrs. Stella Duncan Benson and Emile Johnson” were recognized as universal legatees and placed in possession of the property in question by judgment signed and filed December 27, 1963.
On November 5, 1963, the date provided in the purchase agreement for the passage of the act of sale, nothing was done by either of the parties to the agreement. The attorney for plaintiffs did testify, however, that he made numerous telephone calls “during the period of the contract” to Stroughter to inquire if a notary public had been designated and if the purchaser was ready to accept title and make' the payment agreed. He testified he was “finally told that Thompson did not have the money and could not get a loan.” From this circumstance plaintiffs’ attorney contends that a formal putting in default was not necessary and would have been vain and useless, citing Transcontinental Development Corp. v. Bruning, 195 So.2d 430 *133 (La.App. 4th Cir. 1967); Young v. Carr, 140 So.2d 796 (La.App. 4th Cir. 1962).
We cannot accept this contention for the cases cited are not apposite to the facts presented in the record before us. The pertinent articles of the Civil Code on this subject are as follows:
“Art. 1931. A contract may be violated, either actively by doing something inconsistent with the obligation it' has proposed or passively by not doing what was covenanted to be done, or not doing it at the time, or in the manner stipulated or implied from the nature of the contract.”
“Art. 1932. When there is an active violation of the contract, damages are due from the moment the act of contravention has been done, and the creditor is under no obligation to put the debtor in default, in order to entitle him to his action.”
“Art. 1933. When the breach has been passive only, damages are due from the time that the debtor has been put in default, in the manner directed in this chapter.
“The rules contained in this and the preceding articles, however, are subject to the following exceptions and modifications : * * *
[Exceptions omitted because not relevant.]”
Our jurisprudence makes a distinction between active and passive breach of contract holding that when a contracting party has refused to do or perform that which he had obligated himself to do or perform, the breach is active, and a putting in default is not necessary. When his nonperformance results merely from his omission or failure to do or perform as contracted, within the time and manner agreed upon, his breach is passive, and a putting in default is necessary. Eota Realty Co. v. Carter Oil Co., 225 La. 790, 74 So.2d 30 (1954); Hoth v. Schmidt, 220 La. 249, 56 So.2d 412 (1951); Stockelback v. Bradley, 159 La. 336, 105 So. 363 (1925); United Shoe Stores Co. v. Burt, 142 So. 370 (L.App.2d Cir. 1932).
The testimony reveals that the defendant, Thompson, was an uneducated person who was waiting for Mr. Strough-ter to tell him when and what to do. He testified that he was at all times ready to complete the sale. It is apparent that Mr. Stroughter thought he could procure a loan for the defendant but that he failed to do so. It was because of his inability to obtain a loan from the source intended that he told plaintiffs’ attorney that Thompson could not get a loan. While it is true that Thompson testified at the trial below that he did not have $8,000 between September 5 and November 5, 1963, and that he was depending on Mr. Stroughter to get him a loan, there is nothing in the record to prove that Thompson could not have obtained the loan on his own resources if he had been placed in default. It is evident from the fact that Thompson drew out of his own bank account $1,000 to make a deposit—$200 more than required—that he had resources available. Furthermore, some time thereafter he did purchase another home in the same general neighborhood for more than twice the agreed purchase price of plaintiffs’ property. He either had a substantial sum available or the credit resources necessary to have completed the $8,000 purchase. At any rate, his ability or inability to finance the purchase could not have been known by the sellers until he was called upon to complete the sale. The assumption that a putting in default would have been vain and useless was not warranted.
As stated above, the plaintiffs were put in possession of the property in question December 27, 1963 and. could not, therefore, have delivered a merchantable title on November 5, 1963. Their attorney seeks to justify this circumstance with the explanation that the attorney handling the succession proceedings, who was also the *134 attorney for Mr. Stroughter, was awaiting approval of the purchaser’s title examiner to be certain that the succession proceedings were completed as the title examiner might require. Since the plaintiffs were under obligation by the terms of the contract to do no more than offer for delivery a “merchantable title” we know of no reason why they should have waited for title approval before tendering delivery of a merchantable title. From this circumstance the plaintiffs were themselves in breach of the contract by failure to tender for delivery a merchantable title within the time specified.
After November 5, 1963 passed without either of the parties to the contract taking steps to put the other in default, they all appeared content to let the matter rest. Mr. Stroughter made no attempt to enforce the obligation for payment of his realtor’s commission and finally when it appeared to him that nothing would ever come of the agreement, he, upon his own initiative, returned the $1,000 deposit to Thompson some 33 months after the terminal date of the contract.
When this suit was filed by plaintiffs against the defendant, then he, by third-party petition, sought recovery from Stroughter for any sum for which he might be cast. Plaintiffs, by supplemental petition, joined Stroughter as a defendant. Stroughter thereupon reconvened against both the plaintiffs and the defendant seeking recovery of his relator’s commission. It was upon these issues that the case went to trial.
From the arguments before this court and the briefs filed on behalf of Thompson and Stroughter it becomes apparent that neither of them ever entertained any thought of asserting any rights against each other or against the plaintiffs in connection with this abortive agreement. The third party and reconventional demands were defensive measures by which they sought to offset any loss which might result from plaintiffs’ suit. This is further borne out by their failure to appeal the judgment dismissing their demands or to answer the appeal in this court. It is apparent that when (1) the act of sale was not passed on November 5, 1963; (2) there was no putting in default nor demand for specific performance; and (3) the real estate broker did not demand payment of a commission, all the parties treated the contract at an end; and the plaintiffs cannot now demand a forfeiture of the deposit.
For these reasons the judgment appealed is affirmed at appellants’ costs.
Affirmed.