Exalton **BROUSSARD**

v.

**AMERADA PETROLEUM CORPORATION.**

**Civ. A. No. 17941.**

United States District Court, W. D. Louisiana, Lafayette Division.

Nov. 8, 1972.

Deshotels & Deshotels, O. H. Deshotels, Jr., Kaplan, La., for plaintiff.

Bailey & Hollier, George J. Bailey, Lafayette, La., for defendant.

MEMORANDUM OPINION

PUTNAM, District Judge.

This is an action for partial cancellation, as to 28 acres of land hereafter described, of an oil, gas and mineral lease executed on January 7, 1953 by plaintiff, Exalton Broussard, as Lessor, in favor of defendant, Amerada Hess Corporation (then known as Amerada Petroleum Corporation) Lessee, covering two contiguous tracts of land situated in Vermilion Parish, Louisiana, containing an aggregate of 196 acres, more or less.

The case has been submitted for determination on a motion by defendant and cross-motion by plaintiff for summary judgment, and a stipulation between the parties that there is no genuine issue of fact and that judgment on the motions shall have the same force and effect as if rendered after trial on the merits.

By Order No. 341 of the Department of Conservation of Louisiana dated May 9, 1956, effective June 1, 1956, all of the land covered by the subject lease, except the 28 acres involved in this suit, was included in Landry Sand Units A, B and D. It is acknowledged by plaintiff that these units have produced continuously to the present time, and that the lease is being maintained in force and effect as to all of his land included in said units.

On October 20, 1964, the Department of Conservation issued Order No. 341-E, creating Thibodeaux Sand Unit A which included plaintiff's 28 acres lying outside the Landry Sand Units, and other acreage. The Thibodeaux unit produced continuously until August 3, 1969, at which time production ceased and has not since been restored. No further operations were thereafter conducted on the Thibodeaux unit or the 28 acres in question.

Plaintiff does not deny that the lease was in force as to the acreage in dispute at the time the Thibodeaux unit was created, or that said lease remained in force as to this acreage as long as the unit was in production. However, he contends that once production from the Thibodeaux unit ceased, Lessee was required within 90 days thereafter to restore production or commerce additional operations on the 28 acres in question.

Plaintiff bases his demand for cancellation on the following provision in paragraph 6 of the lease:

"After the discovery and production of oil, gas or any other mineral in paying quantities, either on the leased premises or on lands pooled therewith, the rights granted shall be maintained in effect during and after the primary term and without the payment of rentals hereinabove provided for so long as oil, gas or some other mineral is being produced in paying quantities, or lessee is carrying on operations with reasonable diligence looking to the production thereof. It is provided, however, that if, after the discovery and production of oil, gas or other minerals in paying quantities, the production thereof should cease from any cause this lease shall terminate unless lessee resumes or restores such production, or commences additional drilling, reworking or mining operations within ninety (90) days thereafter and continues such operations without the lapse of more than ninety (90) days between abandonment of work on one well and commencement of reworking operations or operations for the drilling of another, in an effort to restore production of oil, gas or other minerals or (if during the primary term) resumes the payment of rentals in the manner hereinabove provided for in connection with the abandonment of wells drilled."

It is plaintiff's contention that cessation of production from the Thibodeaux unit constituted cessation of production from the portion of his land (28 acres) included in said unit but lying outside the Landry Sand Units, within the contemplation of paragraph 6 for termination of the lease as to said acreage. This court does not so construe the provision.

■ Paragraph 6 provides that after discovery and production of oil, gas or other mineral on the leased premises, or land pooled therewith, the lease shall remain in force and effect so long as production continues. It is clear, in the opinion of this court, that the "cessation of production" required under the same paragraph for termination of the lease has reference to production from the leased premises, *or land pooled therewith*.

This conclusion is bolstered by the following provision in the paragraph pre-

ceding numbered paragraph 1 of the same lease:

"This lease shall be for a term of five years and no months from the date hereof (called 'primary term') and so long thereafter as oil, gas or some other mineral is being produced or drilling operations are conducted either on this land *or on acreage pooled therewith*, all as hereinafter provided for; all subject to the following conditions and agreements:" (emphasis by the court)

And paragraph 2 (which authorizes unitization by Lessee) provides in part:

"Drilling or reworking operations on or production of oil, gas, sulphur or other minerals from land included in such pooled unit shall have the effect of continuing this lease in force and effect during or after the primary term as to all of the land covered hereby (*including any portion of said land not included in said unit*) whether or not such operations be on or such production be from land covered hereby." (emphasis by the court)

The cases of Hunter Company v. Shell Oil Company (1947) 211 La. 893, 31 So.2d 10, Le Blanc v. Danciger Oil & Refining Company (1950) 218 La. 463, 49 So.2d 855, and Delatte v. Woods (1957) 232 La. 341, 94 So.2d 281, firmly establish the rule that in the absence of a lease provision to the contrary, (1) a mineral lease is not divided by inclusion of a part of its acreage in a unit and (2) Lessee's obligations under the lease remain indivisible so that performance by drilling on or production from a unit extends to the entire lease and maintains the same in full force and effect as to all the leased acreage.

In the case now before the court, plaintiff's lease is not only not silent on the subject, but contains specific provisions that the lease will continue in force and effect so long as oil, gas or other mineral is produced from the land covered thereby, or land pooled therewith. It is the Court's opinion, therefore, that production from Landry Sand Units A, B and D had the effect of continuing plaintiff's lease in force and effect not only as to the approximate 168 acres of plaintiff's land included in said units, but also as to the 28 acres lying outside said units. Accordingly, judgment will be rendered herein sustaining defendant's motion for summary judgment, overruling plaintiff's cross-motion for summary judgment and dismissing plaintiff's suit.