HERGET, Judge.
Plaintiffs, Rufus Landry, Brittmar P. Landry, Charles E. Landry, Jr., Octavia *361 Robertson Landry and Mrs. Gertrude Landry Johnson, filed suit against defendants, J. M. Flaitz, American Climax Petroleum Corporation, R. B. Mitchell, A. B. Simmons, Jr., John L. Burt and Raymond Aucoin seeking the cancellation of a recorded mineral lease and assignments of interest therein affecting certain property of Plaintiffs situated in the Parish of Assumption. The lease involved was executed on March 29, 1957 covering the westernmost 100 acres of Voiron Plantation situated on the north rim of the Napoleonville Oil Dome for a primary period of three years. Partial assignments of the lease were thereafter made. The northern portion of the lease comprising some 50 acres was later released by Defendants. To keep the lease in force, admittedly Defendants paid annual rentals which were accepted by Plaintiffs prior to March 29, 1958 and March 29, 1959 but Plaintiffs allege the lease expired on March 29, 1960, the end of the primary term, resulting from the failure on the part of Defendants to fulfill the condition necessary for its extension, specifically in failing to produce minerals from the property, in accordance with the lease, on or before March 29, 1960. Defendants contend the lease has been maintained in force and effect by the * drilling of a well on land unitized with a portion of the lands leased from Plaintiffs as ordered by the Commissioner of Conservation of the State of Louisiana; that, further, under the terms of the lease Defendants have complied with the requirements thereof so that the lease is in full force and effect. From a judgment of the Trial Court in favor of Plaintiffs and against Defendants ordering the cancellation of the lease and assignments and awarding Plaintiffs attorney fees as damages, Defendants perfected this appeal.
The facts are undisputed. The lease was for a primary term of three years ending March 29, 1960. Delay rentals to maintain the lease in force were paid and accepted prior to March 29, 1958 and March 29, 1959', respectively. An oil well was drilled by F. A. Callery, Incorporated known as “Oscar Hebert Well No. 1” located south of Plaintiffs’ property which was completed on January 25, 1960 and on January 28, 1960 tested! and found to be capable of producing at the rate of 192 barrels per day. At the inception the drilling of this well was undertaken by the contractor without the active participation of Defendants. Nonetheless, on January 22, 1960, three days prior to the completion of the well on January 25, Defendants made application to the Commissioner of Conservation of the State of Louisiana for an order establishing a unit for the production of oil from the Hebert well and, in accordance with said application, the Commissioner designated the Hebert well as a unit well for Unit 9 composed in part of 9.245 acres of the property covered in the lease granted by Plaintiffs to Defendants. Under the permit granted by the Conservation Department for the drilling of the Hebert well, there was placed therein a restriction prohibiting production, other than for testing from the well, until an appropriate unit was formed. On March 28, subsequent to the issuance and recordation of the order creating Unit 9, Defendants requested the designated operator of the unit well to secure an allowable which could then be obtained inasmuch as the order of the Conservation Commissioner formed a unit, and the operator was requested to place the well on production. Accordingly, on March 29, 1960 such request was made by the operator to the Department of Conservation and on April 5, 1960 effective April 1, 1960 an order was forthcoming from the Department establishing the allowable. The operator placed the well on commercial production on April 1 and from that time it has continued to produce in paying quantities. The proportionate royalties due Plaintiffs as result of said production were tendered to Appellees but same were refused. In its written reasons for judgment, the Trial Court observed :
“Suffice it to say that the evidence, parol and documentary, convinces this Court that defendants, deliberately or *362 through omission, did not include the leased premises in their pooling, drilling,, or producing plans: And that their actions and the orders of the Conservation Commission after defendants became aware of their predicament, cannot be justified under the lease, nor under the statutory law, LSA-R.S. 30:2 Et Seq, nor under the jurisprudence so well cited in brief by plaintiff and defendant. This Court finds that the lease has expired.”
Inasmuch as (1) the evidence without contradiction shows there was created a unit which included a portion of the lands Plaintiffs leased to Defendants, (2) the order of the Commissioner of Conservation issued one day prior to the expira-ation of the primary term of the lease established the well was capable of producing in paying quantities, and (3) the ascertainment of this fact having been evidenced prior to the expiration of the primary term of the lease, in our opinion refutes the Trial Judge’s finding the Defendants did not include the leased premises in their pooling, drilling and producing plans. It is now well settled the orders issued by the Commissioner of Conservation of Louisiana in reference to drilling and production of oil are, so to speak, the law of the case and govern despite any provisions of the conventional obligations made and assumed by the lessor and lessee. Admittedly, upon appropriate application by Appellants when the permit was issued for the drilling of the well the Commissioner of Conservation ordained same could not be produced other than for testing. Nevertheless, prior to the expiration of the primary term of the lease the Commissioner created Unit 9 composed in part of a portion of the property covered by the lease herein involved and provided for allowable to be produced from said well.
With unrestrained diffidence to the opinion of the Trial Court, we are constrained to hold Defendants have in truth and in fact complied with their obligations for the production of oil from the leased premises, in consequence of which we are of the opinion the Trial Court erroneously ordered the cancellation of the lease and assignments.
Counsel for Plaintiffs concede had Defendants, as without question they had the right to so do, voluntarily agreed with other land owners to unitize an area which would include a portion of Plaintiffs’ lands and from the inception had drilled the Hebert well under such covenant, same would have constituted compliance with the lease obligations undertaken by Defendants. Readily do they concede inasmuch as the lease herein involved did not contain a “Pugh Clause” requiring lessee to either release non-unitized portions of the leased premises or resume paying rentals or drill thereon, the inclusion of any portion of the land of Plaintiffs leased in the proposed unit, plus production therefrom, would have held the entire tract. It is their contention therefore the well, though in fact completed within the primary term, was not producing within the required time of the lease entitling Plaintiffs to a cancellation of the lease and assignments.
In Delatte v. Woods, 232 La. 341, 94 So.2d 281, though in fact the evidence shows in that case there was under consideration the existence of a shut-in gas well rather than a producing or drilling well, we are of the firm opinion the observations therein are particularly applicable to the resolution of the issues herein involved. Therein the Court noted at page 287 of 94 So.2d:
“Sec. 8(b) of Act 157 of 1940, as amended, LSA-R.S. 30:9(B), authorizes the commissioner to establish drilling units so as to prevent waste and to avoid the drilling of unnecessary wells. The unit contemplated means the maximum area that might be efficiently and economically drained by one well, the owner of such tracts to share rateably according to their ownership. Such units constitute a developed area as long as a well is located therein which is capable of producing oil or gas in paying quantities.” (Emphasis sup *363 plied.) See also Union Oil Company of California v. Touchet, 229 La. 316, 86 So.2d 50.
For these reasons the judgment of the trial Court is reversed.