HERGET, Judge.
Plaintiffs or their ancestors in title granted leases to Defendant of their mineral interests in a tract of land in St. Mary Parish, Louisiana comprising 309.04 acres of land. Thereafter, in the summer of 1945, Defendant drilled a well and oil production was obtained and continued for several years maintaining the leases in force. However, upon diminution of production from the well, Plaintiffs became dissatisfied with the development of the 309 acre tract leased to Defendant and, accordingly, demanded that Defendant drill additional wells. The issue between the parties as to the obligation of Defendant to drill additional wells was compromised and the agreement was reduced to writing. Under the compromise agreement Defendant released all of the 309 acre tract except 90 acres thereof on which was located the producing well. Insofar as the continued production from said 90 acres retained and in consideration of the release by Defendant of the remainder of the leased acreage, paragraph IV of the compromise agreement prescribed:
“In consideration for the partial release so granted by Atlantic, Lessors acknowledge that said mineral leases are and shall remain in full force and effect insofar as the retained tract described in the preceding paragraph is concerned so long as production is being obtained from said tract or Atlantic is conducting operations in an effort to restore such production pursuant to the terms of said contracts; and it is agreed specifically by Lessors that Atlantic shall be free of any development demands or obligation in connection with the tract so retained under the terms of said leases and, therefore, shall not be required to drill any additional wells on said tract, unless the drilling of such an additional well may be required to comply with the offset requirements of said leases.”
On September 15, 1955 the Department of Conservation of Louisiana issued an Order, Number 316, the validity of which has not been questioned by Plaintiffs, in which there was created a unit containing 523.196 acres for the Adeline Sand and which was designated as the Adeline Sand Gas Unit. *414 The unit so created, though served by four other wells, encompassed within its boundaries 44.43 of the 90 acre tract of Plaintiffs’ land retained by Defendant in the compromise agreement and the oil well. On the date of the execution of the compromise agreement as well as on the date of the Conservation Commissioner’s Order Number 316 on September IS, 1955 the well located on the 90 acre tract of Plaintiffs retained by Defendant was producing and continued to produce until February of 1956, at which time it was plugged and abandoned. In consequence of the creation of the unit, Plaintiffs have participated in the production from said unit proportionately to the extent of the 44.43 acre tract placed therein.
On September 8, 1961 Plaintiffs instituted this suit seeking to have cancelled the leases granted Defendant of the 45.57 acres of their land outside of the Adeline Sand Gas Unit because of the failure on the part of Defendant to develop said land for the production of oil under the leases granted it.
Defendant filed a motion for summary judgment and, following a hearing thereon, the Trial Judge in a well considered written opinion rendered judgment sustaining the contention of Defendant, dismissing Plaintiffs’ suit. From this judgment Plaintiffs appealed. ^
The issue presented for our resolution involves the interpretation of the meaning of the language used in paragraph IV of the compromise agreement quoted in full supra as to the obligations imposed on' Defendant for the development of the 90 acre retained tract. It is Plaintiffs’ contention the compromise effected contemplates production from an oil well physically located within the 90 acre tract. Defendant, on the other hand, maintains its obligation for development of the 90 acre retained tract was restricted to production from the land and as long as such production continued Defendant was under no obligation to drill additional wells on the tract as, admittedly, no contention was made by Plaintiffs Defendant was called upon to drill additional wells to comply with offset requirements of the leases. Therefore, the sole issue is whether by including within the Adeline Sand Unit 44.43 acres of Plaintiffs’ land, from which unit Plaintiffs are sharing in the production, Defendant thereby complied with its restricted obligation of development of the retained 90 acre tract. In our reading of the compromise agreement reached by the parties we see nothing therein specifically requiring production from an oil or gas well located physically on the 90 acre tract. The agreement simply provides for production from said tract and relieves Defendant from additional development as long as production continues or Defendant conducts operation to restore such production. Under the statutory law of this State, LSA-R.S. 30:10, subd. A (1) (b), it is specifically provided that that portion of production allocated to the owner of a tract included within a drilling unit order by the Department of Conservation shall be considered as having been produced from a well drilled thereon. Accordingly, (1) inasmuch as unquestionably Plaintiffs are sharing in production from said unit, Defendant has complied with the restrictive development agreement by which the parties to this litigation settled the contention of Plaintiffs as to the development of the 90 acre retained tract; and (2) inasmuch as production therefrom has resulted from a portion of the retained 90 acre tract, Defendant has complied with its obligation and Plaintiffs are not entitled to a cancellation of the leases insofar as same affects acreage within the 90 acre tract lying outside of the 44.43 acres placed within the unit.
We are of the opinion even had the compromise agreement required production from a well physically located on the 90 acre retained tract to relieve Defendant of further development of said 90 acres, production from land unitized with a portion of said 90 acre tract by order of the Commissioner of Conservation would con *415 stitute production from the 90 acres leased. Consequently Defendant would be relieved of additionally developing that portion of said 90 acres located outside of the unit inasmuch as the orders of the Commissioner of Conservation relating to drilling and production of oil are paramount, become the law of the case, and govern, despite conventional contractual obligations between landowners and lessees. Delatte v. Woods, 232 La. 341, 94 So.2d 281; Hunter Company v. Shell Oil Company, 211 La. 893, 31 So.2d 10; Landry v. Flaitz, La.App., 148 So.2d 360.
Affirmed.