**J. S. DUBOIS et al.**

v.

**MIDWEST OIL CORPORATION.**

No. 9006.

United States District Court
W. D. Louisiana,
Lafayette Division.

July 9, 1963.

Edward M. Carmouche, Carmouche & Martin, Lake Charles, La., for plaintiffs.

Lawrence E. Donohoe, Jr., Davidson, Meaux, Onebane & Donohoe, Lafayette, La., for defendant.

PUTNAM, District Judge.

Plaintiffs seek cancellation of an oil, gas and mineral lease affecting lands owned by them in Vermilion Parish, Louisiana. The suit was removed to this court under 28 U.S.C.A. § 1332(a) (1), all plaintiffs being Louisiana citizens and defendant being a Nevada corporation. The value of the lease in dispute clearly exceeds $10,000 and we, therefore, have jurisdiction.

Brought up for argument on defendant's motion for summary judgment, the parties have stipulated that all material and relevant facts are presented by the pleadings, exhibits and affidavits, and submitted all issues for decision on the merits.

## FINDINGS OF FACT

1. The lease was executed on July 11, 1961, affecting some 54 acres of land in the SW/4 of Section 14, Township 13, South, Range 4 East, in Vermilion Parish, Louisiana, in the Erath Field area.

2. On the same date a letter agreement was signed by plaintiffs, whereby

it was stipulated as additional consideration for the lease that defendant would appear at hearings of the Louisiana Department of Conservation at its expense and attempt to have all or some part of the land included in a unit or units on which there was located a well capable of production in paying quantities.

3. Prior to the execution of the lease, a well capable of producing gas and oil in paying quantities had been brought in on lands in that vicinity, by Skelly Oil Company, known as the Eleazor No. 1 Well. This well was shut in for lack of marketing facilities.

4. After execution of the lease, following a hearing before the Commissioner of Conservation of the State of Louisiana, Order No. 34–L was issued, creating a unit for the production of hydrocarbons from the Eleazor No. 1 Well, and including approximately 17 acres of the plaintiffs' land in such unit. This Order issued on September 21, 1961.

5. Order No. 34–L, as is customary in this State, provided that the lands included within the unit were such as could be efficiently and economically drained by the unit well, and further provided: "All operations on and production from said unit shall be considered operations on and productions from each of the separate tracts within said unit and under the terms of each of the mineral leases affecting said tracts."

6. Effective date of Order 34–L was September 1, 1961.

7. Before expiration of the primary term of plaintiffs' lease (which was for one year from and after July 11, 1961), defendant tendered and deposited to lessees' credit "shut-in" rental payments of $270.00, as provided for in paragraph 2 of the lease.

8. Plaintiffs refused such payment, and after July 11, 1962, demanded cancellation of the lease. This suit followed.

## OPINION

■ The sole question presented for decision is whether or not under Louisiana law the Commissioner's Order No. 34–L placing a portion of the leased land in a unit with the shut-in Eleazor No. 1 Well constituted a compliance with the terms of the lease in this case sufficient to permit extension thereof beyond the primary term by payment of shut-in rentals. We conclude that it does, and hereinafter set forth reasons in memorandum form.

The pertinent provisions of plaintiffs' lease upon which they rely as the basis for this suit are as follows:

"If Lessee during or after the primary term should drill a well capable of producing * * * in paying quantities, * * * and should Lessee be unable to operate said well because of lack of market or marketing facilities or governmental regulations, then Lessee's rights may be maintained beyond or after the primary term without production * * * by paying Lessor annual rentals at the rate of Two Hundred Seventy & No/100 Dollars each, * * *."

This language is to be found in the last part of the so-called "pooling clause" set out in paragraph 2 of the instrument.

The unique argument is made that the shut-in rentals payable for a well with which the property is unitized applies only to wells drilled by lessee during the primary term, and not to wells drilled before the lease was executed, even though unitization took place during the primary term. Under other provisions of the lease it may only be maintained beyond the primary term by production from the land or lands pooled therewith in paying quantities, not by shut-in rentals paid in lieu of production.

The case of Delatte v. Woods, 232 La. 341, 94 So.2d 281, decided by the Supreme Court of Louisiana in 1957, presented a similar factual situation.[1]

---

1. Cf. Odom v. Union Producing Co., 243 La. 48, 141 So.2d 649, decided December 11, 1961, where the holding of Delatte was again recognized by the Supreme

There an extension of lease was executed by lessors, and after its confection part of the land was placed in a unit served by a shut-in well drilled and completed prior to the extension agreement. Following unitization, lessee began payment of reduced monthly delay rentals which the agreement provided would be payable after actual drilling operations were commenced on the leased premises. The Court held that incorporation of the land into the unit by the Commissioner constituted production from each and every tract of land within the unitized area, as fully to all intents and purposes as if the well were actually located on each tract embraced therein. In this regard, it was said:

"It is firmly established in our jurisprudence that statutory authority is granted to the Commissioner of Conservation to create drilling developmental units and to integrate various tracts of various owners contained in such units, that the orders of the Commissioner supersede, supplement, replace and are incorporated in the provisions and obligations of contracts and leases relating to mineral development. LSA–R.S. 30:1 et seq. *It necessarily follows that these orders become the law as between the parties in determining their respective rights and obligations.*

"Sec. 8(b) of Act 157 of 1940, as amended, LSA–R.S. 30:9(B), authorizes the Commissioner to establish drilling units so as to prevent waste and to avoid the drilling of unnecessary wells. The unit contemplated means the maximum area that might be efficiently and economically drained by one well, the owner of such tracts to share rateably according to their ownership. *Such units constitute a developed area as long as a well is located*

therein which is capable of producing oil or gas in paying quantities." (94 So.2d 287. Emphasis supplied.)

It was pointed out that such unitization has been repeatedly recognized as a user of mineral rights under the area affected so as to interrupt prescription, the same being true as to royalty interests outstanding in such tracts. The Court then said:

"Under these circumstances Unit B in which a portion of the leased premises was embraced constituted a developed area as defined by the conservation statute, supra, and therefore defendant Woods was relieved from any drilling obligation called for by his lease as extended on that portion of the leased premises embraced within said Unit B." (94 So.2d 288. Emphasis supplied.) [2]

Such is the situation presented. Further reference to the "letter agreement" establishes beyond any question that the parties contemplated and actively desired the unitization of all or part of the leased land with other lands on which was located "a well or wells capable of production of oil or gas * * * in paying quantities". As additional consideration for the lease, defendant obligated itself to seek this development before the Commissioner. Having done so successfully, it has obtained production for Lessors in accordance with the terms of the lease and the agreement which will ultimately result in their being paid considerably more royalty than the 1/8 provided for by the commercial lease form used in this instance.

Until such time as marketing facilities are provided and the payment of production royalties is forthcoming, annual payments of $270.00 each as provided in the contract are sufficient to maintain the lease for five years beyond the expiration of the primary term (July 11, 1962).[3]

Court, and distinguished from the situation presented where valid unitization orders of the Department of Conservation do not intervene.

2. To the same effect is Schnitt v. Woods, 125 So.2d 451 (La.App. 1 Cir.).

3. Plaintiffs do not argue the sufficiency of the shut-in rental paid, although in its original brief defendant goes to great lengths to demonstrate that the sum of $270.00 paid to all three lessors jointly is a compliance with the lease. We agree

Not only is the lease maintained as to the land included in the unit, but, there being no provision to the contrary found therein, it is likewise maintained as to all of the remaining property, subject to the implied obligation to reasonably develop. Hunter Co. v. Shell Oil Company, Inc., 211 La. 893, 31 So.2d 10; LeBlanc v. Danciger Oil Company, 218 La. 463, 49 So.2d 855; Landry v. Flaitz, et al., 148 So.2d 360 (La.App. 1 Cir.).

For these reasons, judgment will be entered denying the relief sought and dismissing this complaint.

with defendant's construction of the contract but do not feel that it warrants

discussion here as plaintiffs do not raise the issue. ....