212 So.2d 148 (1968)
Paul E. FREMAUX, Plaintiff-Appellant,
v.
Glynn D. BUIE et al., Defendants-Appellees.
No. 2387.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1968.
*149 Pugh, Buatt, Landry & Pugh, by Lawrence G. Pugh, Jr., Crowley, for plaintiff-appellant.
Liskow & Lewis, by Robert T. Jorden, Lafayette, Dale, Richardson & Dale, by E. Leland Richardson, Baton Rouge, for defendants-appellees.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
This is a suit by a landowner-lessor for partial cancellation of a 1964 mineral lease granted by him. The trial court sustained an exception of no cause of action and dismissed the plaintiff's suit. By his appeal, the plaintiff principally contends that the trial court erred in dismissing his suit on an exception to the pleadings, thus depriving him of a trial on the merits at which factual evidence could have proved a cause of action pleaded.
The ground for cancellation alleged by the plaintiff is nonpayment of delay rentals. The lease contains a Pugh Clause providing that "* * * in the event a portion or portions of the land herein leased is pooled or unitized with other land so as to form a pooled unit or units, operations on or production from such units will maintain this lease in force only as to the land included in such unit or units * * *."[1] [Italics ours.]
*150 The effect of the clause is to divide the leased premises into unitized and non-unitized areas. For the non-unitized acreage, the clause requires the lessee to pay delay rentals to maintain the lease in force, despite production from the unitized acreage.
The plaintiff-landowner alleges that the defendant lessees had formed a forty-acre unit around a producing well which had been completed in 1965, but that said defendants had refused despite demand to pay the delay rentals on the non-unitized remainder of the 367-acre tract. These allegedly had become due in 1966 and in 1967 by reason of the Pugh Clause's application.
The threshold thrust of the defendants' exceptions of no cause of action is that no unit had been formed from the leased acreage. (If not, then of course the payment of production royalties from the producing well maintained the lease in force not only as to the 40 acreas about the well but also as to the entire 367-acre tract. In the absence of contrary lease provision, the lessee's performance of his indivisible obligation to drill obligates the lessor to perform his corresponding indivisible obligation to deliver the entire amount of the land leased. See Hunter Co. v. Shell Oil Co., 211 La. 893, 31 So.2d 10 (1947) and cases cited therein.)
The plaintiff urges that the trial court committed error to dismiss his suit upon an exception to the pleadings. He contends that the allegations of his petition do state a cause of action: namely, that a unit was formed from the leased acreage, and that consequently, by lease provision, annual delay rentals became due, but are unpaid, for the non-unitized acreage. The plaintiff argues that, this being so, the court incorrectly sustained the objection of no cause of action, since evidence potentially admissible under the pleadings could have proved the plaintiff's case.
The function of the exception urging the objection of no cause of action, LSA-CCP Art. 927(4), is to raise the general issue whether any remedy is afforded by law to the plaintiff under the allegations of the petition. It is triable on the face of the papers. For purposes of its determination, all well-pleaded facts of the petition and any annexed documents must be accepted as true, with all doubts being resolved in favor of the sufficiency of the petition. Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961); Bielkiewicz v. Rudisill, 201 So.2d 136 (La.App.3d Cir. 1967).
The plaintiff-appellant's contention overlooks that, with commendable specificity, his petition does not allege only generally that a unit was formed. Instead, the petition specifically alleges that such a unit had been formed "by instrument dated May 14, 1966, annexed hereto and made part hereof".[2] La.CCP Art. 853 provides: "* * * A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."
*151 Thus, as pleaded, the sole contention of the plaintiff is that a unit was formed by reason of the instrument dated May 14, 1966. This document forms part of the pleadings and may be considered for purposes of determining whether the petition states a cause of action, having due regard for the principle that all doubts must be resolved in favor of the sufficiency of the petition in this respect. Elliott v. Dupuy, cited above. (It is to be remembered that the Pugh Clause and the unfulfilled (alleged) obligation to pay delay rentals do not become operative unless a unit is formed pooling some of the leased land.)
Examining the instrument of May 14, 1966, we find it to be an assignment and reduction of an overriding royalty interest applicable to 40 acres per a plat attached to the agreement. This acreage is referred to in this assignment instrument as "the proration or conservation unit for the first test well drilled on land covered by those leases hereinabove described". The instrument does not, however, create or declare any unit out of the leased landas the agreement specifically states, "it is the [sole] purpose and intent of this assignment to effect such reduction in said overriding royalty interest". Exhibit P-3, Tr. 14.
3. Paragraph 2 of the lease provides:
"Lessee at its option, is hereby given the right and power without any further approval from Lessor to pool or combine the acreage, royalty, or mineral interest covered by this lease, or any portion thereof, with other land, lease or leases, royalty and mineral interests in the immediate vicinity thereof, when, in Lessee's judgment, it is necessary or advisable to do so in order to properly develop and operate said premises so as to promote the conservation of oil, gas or other minerals in and under and that may be produced from said premises or to comply with the spacing or unitization order of any Regulatory Body of the State of Louisiana or the United States having jurisdiction. * * * Lessee shall execute and record in the Conveyance Records of the Parish in which the land herein leased is situated an instrument identifying and describing the pooled acreage; and upon such recordation, the unit or units shall thereby become effective * * *."
The trial court correctly held that the instrument relied upon does not form a unit. It is only an assignment of royalties, with a description of the forty acres around the producing well as the acreage upon which the agreement will affect the allocation of working interest royalties as between the lessee interests. The reference to a "proration or conservation unit for the first well drilled" is apparently relied upon as indicating that a pooled unit was formed (if only of the plaintiff's interests with other co-owners of the surface). However, this descriptive phrase en passant does not change the nature of the instrument, which merely assigns royalty, into an instrument which forms a unit out of the plaintiff's land. And the plaintiff relies only upon this unambiguous instrument as having created a unit.
The plaintiff's counsel further urges that, even though the unit was formed only for accounting purposes between lessees, it was still a "unit" as described by the lessee's lease-power to declare units unilaterally by execution and recordation of an instrument to this effect.
We do not regard this argument as well-founded. A "unit" of acreage formed merely for intra-lessee division of mineral production does not, in our opinion, constitute a pooling unit within the intent of the Pugh Clause so as to make its provisions operative: The intra-lessee accounting "unit" does not affect the landowner-lessor interests; its creation or not is immaterial, insofar as the function and purpose of the Pugh Clause is to prevent undesirable legal consequences of unitizing for the landowner-lessor. See Footnote 1 above.
(For that matter, we do not regard an intra-lessee designation of acreage as a "unit" for accounting purposes as the unilateral declaration of a unit as defined by the pooling clause of the lease, having in view that the lease pooling power is limited to the purposes of proper development, *152 of conservation, or of compliance with governmental regulation. See Footnote 3 above.)
We thus find: (a) As a matter of law, the exhibit solely relied upon as creating a unit does not do so; (b) Consequently, no obligation to pay delay rentals as to the non-unitized area existed; and (c) Therefore, the petition does not state a cause of action. No contention is advanced by pleading or argument that any act or evidence other than the instrument is relied upon as having created a unit, so as possibly to indicate remand for amendment, La. CCP Art. 934, rather than dismissal.
Accordingly, we affirm the trial court judgment dismissing this suit. The plaintiff-appellant is to pay the costs of this appeal.
Affirmed.
NOTES
[1] The clause is named after its creator, the late Lawrence G. Pugh, Sr., a distinguished attorney of Crowley, Louisiana. Its purpose is to avoid the consequences of the holding of Louisiana mineral law, see Hunter Co. v. Shell Oil Co., 211 La. 893, 31 So.2d 10 (1943) and following, that production from a unit including a portion of a leased tract will maintain the lease in force as to all the lands covered by the lease. Gremillion, The "Pugh Clause" and Some of Its Ramifications. 11 La.Bar Journal 123 (1963); Moses, Some Comments on the "Pugh" Clause in Louisiana Gas and Mineral Leases, 37 Tul.L.Rev. 269 (1963); Comment, 37 N.Y.U.L.Rev. 162 (1962); Note, 40 Texas L.Rev. 583 (1962). For reasons of conservation and economic efficiency, a common practice in mineral production operations is to "pool" or "unitize" two or more tracts of land into one unit for drilling and production purposes.
[2] In full, allegation 9 of the plaintiff's petition alleges:

"By instrument dated May 14, 1966, annexed hereto and made part hereof as `Exhibit P-3' defendants formed a forty (40) acre unit around the said `No. 1 Sweeney, et. al.' well, filing a plat of the unit in the records of Acadia Parish, Louisiana, which plat is made part of said `Exhibit P-3'. The unit was formed pursuant to Paragraph 2 of the oil, gas and mineral lease annexed hereto as `Exhibit P-1'."