# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
June 23, 2010

No. 09-30499

Lyle W. Cayce
Clerk

RATHBORNE LAND COMPANY, L.L.C.,

Plaintiff - Appellee

v.

ASCENT ENERGY, INC.; ASCENT ENERGY LOUISIANA, L.L.C.,

Defendants - Appellants

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, GARZA, and CLEMENT, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Defendants-Appellants Ascent Energy, Inc. and Ascent Energy Louisiana, L.L.C. (collectively, "Ascent") appeal from a bench trial in which Rathborne Land Company, L.L.C. ("Rathborne") was awarded damages for Ascent's breach of its obligations to reasonably develop and explore a leased, 449.57-acre parcel of oil, gas, and mineral land. Ascent argues that Rathborne failed to put Ascent into default before filing suit and that Rathborne is not the proper plaintiff. Ascent also challenges various aspects of the district court's award of damages, pre-judgment interest, and fees.

No. 09-30499

**I**

In 1952, the Joseph Rathborne Land & Lumber Company, Inc. granted an oil, gas, and mineral lease to the California Company for a parcel of land in St. Charles Parish, Louisiana. The original lease covered 5,729.77 acres, but, through a variety of partial releases, the lease now covers 449.57 acres. This 449.57-acre parcel is at the center of the present case.

The California Company's interest in the now-449.57-acre lease passed through various entities, eventually coming into Ascent's possession. The succession of lessors is similarly complicated. Indeed, as discussed below, the identity of the lessor remains unresolved, notwithstanding a stipulation in the pre-trial order that Rathborne Land Company, L.L.C., the plaintiff in this case, is the successor owner of the now-449.57 acre lease.[1]

On November 18, 2002, Rathborne's counsel sent Ascent the following letter (the "November 2002 Letter"):

**Re: Demand for Development**

This firm represents the interest of the current Lessors . . . . You and your predecessors in title have failed and refused to comply with your lease obligations to reasonably develop and further explore all portions of the lands currently burdened by said lease. Accordingly, this letter constitutes formal demand of your Lessors for the immediate release of all undeveloped and non-producing portions of this lease.

Should you fail or refuse to provided [sic] undersigned counsel with a recordable instrument of the requested release within thirty (30) days of your receipt of this letter, we have been instructed by your Lessors to take whatever legal action is necessary to secure the

---

[1] Although we refer to "Rathborne" throughout this opinion, we do so as a matter of clarity and convenience. As discussed in Section III.F, we leave it to the district court on remand to determine whether Rathborne Companies East, L.L.C. or Rathborne Land Company, L.L.C. is the proper lessor/plaintiff.

2

No. 09-30499

cancellation and release of all undeveloped and unexplored portions of this lease.

Following the November 2002 letter, the parties attempted to settle their dispute, but were unable to reach agreement. In May 2005, Rathborne, along with another plaintiff who also leased mineral property to Ascent, filed suit against Ascent in Louisiana state court.[2] They alleged that Ascent had failed to perform its obligations of reasonable development and further exploration as required by Louisiana's prudent operator standard under LA. REV. STAT. ANN. § 31:122 (2000). Ascent removed the case to federal court.

In February 2006, Rathborne filed an amended complaint, asking for cancellation of the lease and damages. At the center of Rathborne's complaint was Ascent's failure during the preceding years to participate in a number of opportunities to conduct a 3-D seismological survey, which, according to Rathborne, could have aided the development of the mineral leases. Because the 449.57-acre parcel sat in the middle of a larger 5,834-acre parcel, Ascent's refusal to participate in a seismic survey effectively made it impossible to conduct a useful survey of the rest of the adjoining land. The complaint alleged that Ascent was in violation of its lease and statutory obligations to reasonably develop and explore, and that the lease had failed to produce oil and gas in paying quantities, as required by both the lease and Louisiana law.

Ascent filed a motion to dismiss or, alternatively, a motion for summary judgment in August 2006, alleging that the November 2002 letter failed to comply with notice and opportunity-to-cure requirements under the lease and under Louisiana law. The district court denied the motion.

The district court held a bench trial over several days in early March 2007. In May 2007, Ascent filed a motion to introduce two new pieces of evidence: (1)

---

[2] The other plaintiff later settled with Ascent and has not participated in the instant appeal.

3

that Rathborne was not, in fact, the lessor of the 449.57-acre parcel, and thus not the proper plaintiff; and (2) that Ascent had released the 449.57-acre lease in response to a new demand letter from Rathborne. The district court denied Ascent's motion to dismiss on the grounds of mistaken parties; the release of the lease, on the other hand, mooted part of Rathborne's complaint, narrowing the issue to damages only.

The district court issued its judgment and opinion in late 2008. The court found Ascent to have breached its obligation to reasonably develop and explore. It awarded Rathborne damages for three years' "simple interest," or the time value of money, on the seismic fee paid to Rathborne in 2006 for the entire 5,834 acres surveyed. That award totaled $43,755. The court also awarded one year's lost leasing revenues (bonus payment plus rental payment) on the entire 5,834 acres, totaling $2,916,000. The court held that Ascent had ceased to be a good faith possessor of the 449.57-acre lease in February 2006, and thus owed Rathborne an accounting and payment of all production from the property since that date. That award totaled $26,280.71. The court also awarded Rathborne a stipulated amount of attorney's fees, totaling $286,707.

The district court invited the parties to brief the issue of whether it should award Rathborne pre-judgment interest on its damages award. Following briefing, the court issued another opinion, awarding Rathborne pre-judgment interest on all amounts except the simple interest award for seismic fees.

Ascent timely appealed. On appeal, Ascent does not challenge the district court's rulings that it breached its lease obligations to reasonably develop and explore, and that it ceased to be a good faith possessor of the 449.57-acre lease in February 2006. Instead, Ascent renews its arguments that the November 2002 letter did not satisfy Louisiana's demand requirement and that Rathborne is not the proper plaintiff. Ascent also raises several objections about the propriety of the damages, pre-judgment interest, and attorney's fees awarded.

No. 09-30499

## II

## A

Ascent argues that Rathborne's claims should have been dismissed because Rathborne did not satisfy Louisiana's requirements for providing lessees notice of an alleged breach of obligations and time to cure that breach (*i.e.*, Rathborne failed to put Ascent in default) prior to bringing suit. The district court rejected this argument when it ruled on Ascent's pre-trial motions and again in its final judgment opinion, holding that the November 2002 demand letter satisfied the requirements to place Ascent in default of its lease.

LA. REV. STAT. ANN. § 31:136 (2000) provides:

> If a mineral lessor seeks relief from his lessee arising from . . . any . . . claim that the lessee has failed to develop and operate the property leased as a prudent operator, he must give his lessee written notice of the asserted breach to perform and allow a reasonable time for performance by the lessee as a prerequisite to a judicial demand for damages or dissolution of the lease.

Thus, before Rathborne could bring suit for Ascent's breach of the obligation to reasonably develop and explore, it needed to (1) give adequate written notice of the breach to Ascent; and (2) allow Ascent a reasonable amount of time for performance. *See McDowell v. PG&E Res. Co.*, 26,321 (La. App. 2 Cir. 6/23/95); 658 So. 2d 779, 783 ("To cancel a lease for breach of an implied covenant, the plaintiff is required to place the defendant formally in default prior to seeking judicial intervention."). The lease contract also had a parallel requirement, which set the reasonable time to cure at 60 days.

The parties disagree as to the proper standard of review. Ascent argues that the standard is de novo because the appeal is from the denial of Ascent's motion to dismiss, or, in the alternative, for summary judgment. Rathborne contends that the standard is clear error because the sufficiency of the demand was an issue of fact decided by the court as part of the bench trial. Whether the

5

challenge is to the denial of Ascent's motion or the district court's post-trial opinion, the proper standard of review is de novo. Since the issue turns on whether the November 2002 letter satisfies LA. REV. STAT. ANN. § 31:136, it has nothing to do with the district court's factual findings. Rather, the question is a matter of law, and thus subject to de novo review. *See Rutgers v. Martin Woodlands Gas Co.*, 974 F.2d 659, 661 (5th Cir. 1992).

Ascent does not seriously contend that the November 2002 letter failed to put Ascent on notice that Rathborne considered Ascent to be in violation of the obligation to develop and explore the leased premises, the first requirement of LA. REV. STAT. ANN. § 31:136. Instead, Ascent focuses its complaint on the second requirement, that the lessee be afforded a reasonable opportunity to perform its development obligations. Ascent cites *Hunt v. Stacy*, 25578 (La. App. 2 Cir. 2/23/94); 632 So. 2d 872, in which the court criticized demand letters that contained content similar to the November 2002 letter.[3] In approving the trial court's finding that the demand requirement had not been met, the appeals court noted that the "central focus" of the letters was "to demand a release of the leases" as opposed to requesting further development. *Id.* at 876.

Although the language of the November 2002 letter arguably focuses as much on the demand for release as the demand for development, we nonetheless find the instant case distinguishable from *Hunt*. In *Hunt*, the lessors' initial demand letters were followed two months later by a letter in which the lessors wrote to the lessees advising that the lessors "had no plans to further pursue the matter." *Id.* at 874. Five years later, the lessors sent a letter stating that the leases were deemed terminated and, just three days later, filed suit to judicially terminate the leases on the basis of a failure to explore and develop. *Id.* Here,

---

[3] The other relinquishment cases cited by Ascent are not on point because the demand letters in those cases only demanded release of the leases, whereas here, the demand letter specifically demanded development and release. Indeed, the subject line of the November 2002 letter stated in bold: "**Re: Demand for Development**."

by contrast, the initial demand letter was followed by two and a half years of negotiation in which Rathborne made clear exactly what it would consider to be reasonable steps to explore and develop. The letters the parties exchanged during this period clearly show that Ascent was on notice of the development Rathborne sought and that Rathborne provided Ascent a reasonable opportunity to perform its obligations. Unlike the lessees in *Hunt*, Ascent should not have been surprised when Rathborne eventually filed suit in 2005.

To rule in favor of Ascent on this issue would require us to put too much emphasis on form over substance. LA. REV. STAT. ANN. § 31:136 does not specify that any "magic words" must appear in the demand letter. Under Louisiana law, "[t]he purpose of the requirement of putting in default for non-development is (1) to provide the lessee notice that the lessor considers the lessee's actions (or inaction) as violative of the implied obligation to develop the leased premises, and (2) to afford the lessee a reasonable opportunity to perform its development obligations." *Hunt*, 632 So. 2d at 876. Since the November 2002 letter and the intervening two and a half years accomplished that purpose, we hold that the November 2002 letter met the LA. REV. STAT. ANN. § 31:136 demand requirement.[4]

**B**

The district court awarded Rathborne damages for lost leasing opportunities on its property because it found it was "more probable than not" that Rathborne would have been able to lease the property in 2002 or 2003 and earn a bonus of $250 per acre plus at least one year's rental at $250 per acre.

---

[4] Because we hold that the November 2002 letter fulfilled the demand requirement, we also find no error in the award of attorney's fees. LA. REV. STAT. ANN. § 31:209 allows for the award of attorney's fees if a lessee in breach of its lease obligations fails to relinquish the lease within thirty days of a valid demand by the lessor. Ascent's arguments that Rathborne is not entitled to attorney's fees under LA. REV. STAT. ANN. § 31:207 are beside the point since Rathborne is entitled to a fee award under LA. REV. STAT. ANN. § 31:209 regardless of whether it may or may not be entitled to fees under LA. REV. STAT. ANN. § 31:207.

Ascent argues that the court should have required evidence of a "firm offer" to lease the property in question before awarding damages for lost leasing opportunities. Because this issue involves a legal determination of the proper burden of proof, our review is de novo. *Halliburton Co. v. Comm'r of Internal Revenue*, 946 F.2d 395, 398 (5th Cir. 1991).

The district court cited two recent Louisiana cases for the proposition that, in order to recover lost leasing opportunity damages, a plaintiff must show it is "more probable than not" that he would have been able to lease the property in question, absent the lessee's bad behavior. In the first, *Chesapeake Operating, Inc. v. Richardson*, 04-345 (La. App. 3 Cir. 10/13/04); 884 So. 2d 1263, a lessee failed to make rental payments and, as a result, its lease automatically terminated. For a time, however, the lessee refused to release the land back to the lessor. The trial court dismissed the lessor's suit because he failed to prove an "actual, identifiable opportunity" to lease. *Id.* at 1266. The appellate court reversed, holding that, to recover lost leasing opportunity damages, the lessor need not "prove an 'actual, identifiable opportunity' to lease. The standard of proof is preponderance of the evidence. [The lessor] need only prove it more probable than not he would have been able to lease his property had [the lessee] complied with its statutory duty." *Id.* (relying on *Edmundson Bros. P'ship v. Montex Drilling Co.*, 98-1564 (La. App. 3 Cir. 5/5/99); 731 So. 2d 1049). In the second, *Wood v. Axis Energy Corp.*, 04-1464 (La. App. 3 Cir. 4/6/05); 899 So. 2d 138, the court granted lost leasing opportunity damages when a lessee continued to hold a property after the lease had automatically terminated for failure to produce in paying quantities. The court cited *Chesapeake* and held "that the Plaintiffs established more probably than not that they would have had the opportunity to lease the property for $70,000.00" per year, had the lessee released the lease after it terminated. *Wood*, 899 So. 2d at 148.

Ascent argues that *Wood* and *Chesapeake* are distinguishable because, in both cases, the underlying lease was held to have automatically terminated in the past, whereas here Ascent breached obligations under a still-existing lease. Ascent reasons that in automatic termination cases the lessees were held liable for damages under the laxer "more probable than not" standard because they wrongfully retained possession of the lessor's property after the lease terminated.

In the several pages of briefing that Ascent spends on this supposed factual distinction, it never cogently explains why it makes any difference in the standard for recovery of lost leasing opportunity damages. Ascent cites a long string of cases, which, it claims, trace a clear line between automatic termination cases like *Wood* and *Chesapeake*, and breach of obligation cases like this one. In the latter, Ascent claims, Louisiana courts have applied a more rigorous "firm offer" standard before awarding lost leasing opportunity damages. The cases, however, do not come close to proving Ascent's point. Most of them involve not the standard for awarding damages, but the standard for proving a violation of the obligation to reasonably develop. In determining whether there was a breach of the obligation to reasonably develop, courts have held that a vague, imprecise offer by a third party to lease a parcel is not sufficient evidence that the current lessee is not developing in the manner of a prudent operator. But those cases say nothing about the standard for awarding damages once that obligation is determined to have been breached, as it has been here.

In fact, only one of the cases cited by Ascent addresses damages. In every other case, the remedy at issue is cancellation of the lease. That one case, *Goodrich v. Exxon Corp.*, 642 F. Supp. 150 (W.D. La. 1986), made the unremarkable holding that damages would not be awarded in that instance because they were not supported by the record. The court opined, in dictum, that "[d]amages alleged to be due by reason of lost opportunity to lease . . . are

highly speculative in nature." *Id*. at 153.  This comment is hardly grounds for applying a "firm offer" standard, absent any precedent supporting such a rule.

In addition to its faulty caselaw argument, Ascent also argues that a lessee's statutory obligation to present evidence of a release of a lease if the lease automatically terminates[5] somehow suggests that the "more probable than not" standard should be limited to automatic termination cases.  That argument is unconvincing.  Nowhere does Ascent show any connection between this statutory obligation and the standard of proof for recovery of lost leasing opportunity damages.

The only standard in Louisiana caselaw for determining whether to award lost leasing opportunities is the "more probable than not" standard applied by the district court.  Ascent's suggested alternative standard, evidence of a "firm offer" to lease, seems to have been invented without any reliable legal precedent or even a sensible policy argument to support it.  Accordingly, we find no error in the district court's use of the "more probable than not" standard.

**C**

Ascent argues that the district court awarded Rathborne double damages with its lost leasing revenue award.  Ascent reasons that because Rathborne was able to re-lease its 449.57-acre parcel after Ascent relinquished it in 2006, it follows that Rathborne did not miss out on lost leasing revenue (bonus and rental payments) in the end.  In other words, all Rathborne is missing is the time value of money for that leasing revenue, that is, the "simple interest" it could have earned on the leasing revenue if it had received it in 2003 instead of in 2006.  Ascent maintains that the lost leasing damages should be treated the same as the lost seismic fee award, for which the court awarded Rathborne only

---

[5] *See* LA. REV. STAT. ANN. § 31:206 (2000).

the simple interest it could have earned if the fee had been received in 2003 instead of in 2006.

Having determined that the district court properly applied the "more probable than not" standard to the lost leasing issue, we review its factual finding that Rathborne would have been able to lease the parcel a second time under the clearly erroneous standard of review. *See Rhodes v. Guiberson Oil Tools*, 82 F.3d 615, 620 (5th Cir. 1996). If the district court's factual findings are plausible in light of the evidence presented, we will not reverse its decision even if we might have reached a different conclusion. *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 401 (5th Cir. 2002).

Rathborne acknowledges that the district court's award must have been based on the theory that Rathborne would have been able to lease out the 449.57-acre parcel at least twice, had it been available in 2003, the year following Rathborne's demand to Ascent. Here, this favorable assumption was supported by the evidence presented at the bench trial. The testimony of several witnesses, including Greg Lier, Mark Miller, and John Berrnhardt, and documentary evidence evincing leasing opportunities in nearby fields following the completion of seismic surveys indicate a viable market for oil and gas leases in Southeastern Louisiana. For example, Rathborne showed that a seismic survey was conducted on a similar parcel of land, held by Rathborne's parent company, about ten to fifteen miles away from the 449.57-acre parcel. Following this survey, Rathborne's parent company granted several successive mineral leases on the property. Additionally, there was testimony from which the district court could infer that the parcel at issue in this case was similar to nearby parcels leasing at approximately $250 per acre. Given this evidence, the district court did not clearly err in concluding that Rathborne would have been able to lease the disputed acreage more than once if it had been able to seismically survey the parcel prior to 2006.

Ascent nevertheless contends that there was insufficient evidence to support full lost leasing damages because under Louisiana law, "speculation alone cannot support a claim for damages for breach of contract." Ascent cites *Spencer v. Luckenbach Gulf S. S. Co.*, 2 So. 2d 53 (La. 1941), a case in which the Louisiana Supreme Court denied damages for lost membership dues to an unincorporated labor organization because the Court found the connection between the hypothetical lost dues and an employer's breach of an employment contract too tenuous. "[I]n considering a claim for damages for the breach of a contract . . . we can only rest our judgment on the basis of certainty and not on the basis of mere conjecture and speculation." *Id.* at 55.

Ascent also cites *Coon v. Placid Oil Co.*, 493 So. 2d 1236 (La. Ct. App.), *writ denied*, 497 So. 2d 1002 (La. 1986), in which a state appellate court reviewed a damages award for lost future oil revenues for clear error after a lessee caused a blowout that damaged the surface of the lessor's property. The appeals court found that the trial court disregarded evidence that the blowout did not impair the lessor from drilling for oil in the future. Because of this contradictory evidence, the court found "that the plaintiffs failed to prove their claim for loss of future income to a legal certainty, [and] therefore, [that] the trial court clearly erred in awarding damages based on purely speculative evidence." *Id.* at 1246.

Neither *Spencer* nor *Coon* controls here. The link between Ascent's contractual breach and the damages awarded is closer than in *Spencer* and is supported by specific evidence in the record. And, in contrast to the defendant in *Coon*, Ascent has not pointed to any countervailing evidence that would render the district court's award clearly erroneous. Moreover, this circuit has held that while "Louisiana law forbids an award of damages based on speculation[,] . . . compensation for lost profits need not be determined with mathematical precision. Reasonable certainty suffices to permit a court to

12

determine the extent of damages." *Breaux v. Schlumberger Offshore Servs.*, 817 F.2d 1226, 1232 (5th Cir. 1987) (citations omitted). Testimony and documentary evidence showed that similar parcels were leased multiple times during the disputed period. Given this evidence, Ascent is simply incorrect that the damages are supported by speculation alone.

Ascent's argument that lost leasing damages should have been handled in the same way as lost seismic fee damages is also unavailing. There is nothing incongruous about the two awards. The court did not award the full seismic fee amount presumably because it was not persuaded that Rathborne would have collected more than one seismic fee between 2003 and 2006. Conversely, the district court was persuaded that Rathborne would have been able to lease the parcel more than once during the time Ascent held it in violation of its obligation to reasonably develop.

In sum, given the evidence in the record, the district court's award of a full year's lost leasing revenue in addition to the revenue that Rathborne collected following the 2006 seismic survey was not clearly erroneous.

**D**

Having concluded that the district court was correct to award damages for lost leasing revenues, we now turn to Ascent's primary complaint on appeal. Ascent argues that the district court grossly miscalculated the damages because it held Ascent liable for lost revenues on a 5,834-acre area of land even though Ascent had a mineral lease interest in only 449.57 of those acres. By Ascent's calculations, if the seismic fee and lost leasing revenue damages were properly limited to its 449.57-acre parcel, Ascent would owe Rathborne $228,121, far less than the $2,959,755 awarded by the district court.

Whether the district court applied an erroneous theory of recovery in awarding damages based on the larger parcel is a question of law subject to de novo review. *Tyler*, 304 F.3d at 401.

13

The district court held Ascent liable for lost leasing revenues and seismic fees on Rathborne's entire 5,834-acre parcel because it found that Ascent's refusal to include its 449.57-acre leased parcel in seismic surveys of the area made it impossible to conduct useful surveys of the rest of the 5,834 acres. The court further found that, had Ascent agreed to the seismic surveys, it was more probable than not that Rathborne not only would have received seismic fees for the entire 5,384-acre parcel, but also would have been able to lease out the entire parcel.

In Louisiana, a mineral lessee is "bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator." LA. REV. STAT. ANN. § 31:122 (2000). A "prudent operator" implies four obligations on the part of the lessee, two of which are at issue here: "(1) the obligation to develop known mineral producing formations in the manner of a reasonable, prudent operator; [and] (2) the obligation to explore and test all portions of the leased premises after discovery of minerals in paying quantities in the manner of a reasonable, prudent operator." LA. REV. STAT. ANN. § 31:122, cmt. (2000). Ascent correctly notes that these obligations apply only to "the property leased." Ascent also cites case law holding that liability arising under mineral lease obligations ends when the underlying lease is released. *See Shanks v. Exxon Corp.*, 95-2164 (La. App. 1 Cir. 5/10/96); 674 So.2d 473, 478, *writ denied*, 679 So. 2d 436 (La. 1996); *Willis v. Int'l Oil & Gas Corp.*, 541 So. 2d 332, 334 (La. Ct. App. 1989); *Cameron Meadows Land Co. v. Bullard*, 348 So. 2d 193, 195, 199–200 (La. Ct. App. 1977).

Although Ascent's arguments regarding the extent of its obligations are correct, they are somewhat beside the point. The district court did not hold that Ascent had any obligations to develop or explore the entire 5,834 acres. Rather, the court held Ascent liable for damages pertaining to that larger parcel because the larger injury flowed out of Ascent's violation of its lease obligations for the

14

smaller parcel. As Rathborne states in its brief, "Ascent confuses its lease obligation with its liability for the damages caused by a breach of those obligations." Although the district court did not use the term, it essentially awarded consequential damages for Ascent's breach of its lease obligations—damages outside the scope of the lease contract, but which the court found Ascent should have nevertheless foreseen. The district court's damage award is improper not because it rested on a holding that Ascent had some obligation to develop land not covered by its lease, but because this consequential damages theory is novel and inconsistent with Louisiana law.

Neither party provided, nor did our research uncover, any case in which a Louisiana court has awarded damages for breach of the obligation to reasonably develop. The Comment to LA. REV. STAT. ANN. § 31:122 explains that this is because

> [f]rom a practical standpoint it seems that little in the way of damages can be shown in most cases unless the premises are being drained by wells on adjoining land. In that case, the dispute will be dealt with as a failure to exercise reasonable diligence to protect the property against drainage, [another of the four obligations of a "reasonable operator," not at issue here].

The only other kind of potential damages the Comment discusses are damages resulting from the "deprivation of present worth of minerals through failure to produce them expeditiously." *Id*. Though not explicit, read in context, the Comment refers to being deprived presently of minerals beneath the leased parcel, not adjoining parcels held by the same owner.

A leading treatise on oil and gas law includes a more extensive discussion of damages for breach of the obligation to reasonably develop, addressing the issue across jurisdictions nationwide. *See* 5 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 844 (LexisNexis Matthew Bender 2009). Even in this more exhaustive treatment, which details a number

15

of different theories of damages, there is no mention of the possibility that consequential damages beyond the scope of the leased parcel would be awarded. The only cases in which damages beyond the leased parcel were even contemplated involved surface damage that interfered with maintenance of livestock or crops. Even in these cases, courts have refused to award damages for areas outside the leased property unless such damages were provided for in the lease itself. *See, e.g.*, *Frankfort Oil Co. v. Abrams*, 413 P.2d 190, 194–96 (Colo. 1966) (holding that defendant's liability under a surface damage clause was limited to the damages to the land used; the lease clause did not make him liable for indirect or consequential damage to other land).

Since there are no Louisiana cases awarding damages for the failure to reasonably develop and explore, Ascent cites cases awarding lost leasing revenue and seismic fees for breaches of other "prudent operator" obligations. As Ascent notes, in all of these cases, damages were limited to those related to the leased property. The same holds true for each of the cases cited by Rathborne, in which lessees violated their obligation to protect against drainage: only damages related to the leased property were awarded.[6]

We find significant the apparent novelty of awarding consequential damages for breach of the obligation to reasonably develop and explore. No court in Louisiana has awarded *any* damages for breach of this obligation, much less consequential damages for impaired development of adjoining property. Given the novelty of its judgment, the district court's discussion of the reasons it considered the entire 5,834-acre parcel in determining damages was not

---

[6] Although these cases, *Williams v. Humble Oil & Refining Co.*, 290 F. Supp. 408 (E.D. La. 1968), *aff'd in part, remanded in part*, 432 F.2d 165 (5th Cir. 1970) and *Breaux v. Pan American Petroleum Corp.*, 163 So. 2d 406 (La. Ct. App.), *writ denied*, 165 So. 2d 481 (La. 1964), contain language arguably broad enough to justify the district court's award, Rathborne cannot show a single example in which this language was interpreted to support consequential damages flowing from non-leased property.

satisfactorily thorough. It did not discuss, for example, whether Ascent's mineral lease contained any terms limiting or otherwise addressing consequential damages. It did not discuss whether the remainder of the 5,834-acre parcel was already leased to other mineral lessees, whose activities might have offset consequential damages. In short, the district court seems to have made a drastic innovation in Louisiana law (and perhaps oil and gas law generally), without any acknowledgment that it was doing so.

In conclusion, neither the district court nor Rathborne can show adequate ground— indeed, any relevant precedent—for awarding consequential damages for lost leasing and seismic revenues on the entire 5,834-acre parcel. Accordingly, we vacate and remand for recalculation of these damages based only upon Ascent's 449.57-acre lease.

**E**

The district court awarded Rathborne pre-judgment interest on all of the damages except for the award of simple interest on lost seismic fees. Ascent argues that absent a specific request for pre-judgment interest in the pre-trial order, the district court should have considered the request waived.

Ascent cites two cases for this proposition. In *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188 (5th Cir. 1998), this circuit held the district court correctly denied the plaintiff an accounting of profits and attorney's fees because "[b]oth of these claims were not properly preserved below and are therefore waived. It is a well-settled rule that a joint pre-trial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." *Id*. at 206 (quotations omitted). In *Lindy Investment, LP v. Shakertown Corp.*, 209 F.3d 802, 804 n.1 (5th Cir. 2000), this court cited *Capece* in affirming the denial of pre-judgment interest because "[a]ppellants' argument that they are entitled to pre-judgment interest on their award is not properly before this court as the issue was not included in the pre-trial order." Based on these cases,

17

Ascent argues that our precedent requires a plaintiff to include a specific request for pre-judgment interest in the pre-trial order; otherwise the court must consider the request waived. According to Ascent, the district court abused its discretion by not following this precedent and awarding pre-judgment interest not requested in the pre-trial order.

Rathborne argues that it did not waive its claim for pre-judgment interest. It seeks to distinguish *Capece* and *Lindy*, asserting that those cases involved "separate claims for specific damages (accounting profits in *Capece* and litigation expenses in *Lindy*)," unlike this case, in which "Rathborne's claim for pre-judgment interest is not a separate element of damage, but rather a component part of the compensatory damages that were awarded to Rathborne for Ascent's breach of the mineral lease." The district court's opinion relied in part on that same distinction.

The cases, however, do not evince a distinction between pre-judgment interest as a separate claim and pre-judgment interest necessary to fully recompense a party. In *Lindy*, for example, the pre-judgment interest at issue was interest on the underlying damages award, just as it is here. Thus, Rathborne's attempt to distinguish *Lindy* is unavailing.

In support of its award of pre-judgment interest, the district court also reasoned that Rathborne had effectively amended the pre-trial order by expressly pleading for pre-judgment interest "at least twice prior to trial." *Rathborne Land Co., LLC v. Ascent Energy Inc.*, No. 05-2452, 2009 WL 1444531, at *1 (E.D. La. May 21, 2009). "Just as pleadings can be amended by the Pre-Trial Order, so too can the Pre-Trial Order be considered amended or clarified by subsequent pleading, e.g. Pre-Trial Memorandum, *provided* the opposing party has sufficient time to respond to the amendment and was not otherwise prejudiced by the amendment." *Id.* The district court cited no authority supporting its "quasi-amendment" theory.

No. 09-30499

Although we find neither Rathborne's "separate claims" argument nor the district court's "quasi-amendment" theory particularly persuasive, *Lindy* should be read narrowly. FED. R. CIV. P. 54(c), which the district court cited in its opinion, provides that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." To adopt Ascent's broad reading of *Lindy*—that failure to specifically request pre-judgment damages in the pre-trial order bars a judge from awarding them in his final judgment—would undermine this rule.

Ultimately, neither *Lindy* nor *Capece* controls this case because of a key factual distinction. In both of those cases, the district court declined to award pre-judgment interest, and this court upheld the denial on the grounds that a pre-judgment interest claim was not in the pre-trial order. Here, by contrast, the district court awarded pre-judgment interest. The court found Rathborne deserved the award and Ascent had ample opportunity to make its opposing case. This is exactly the sort of scenario contemplated by Rule 54(c). Although *Lindy* can be read as precedent for affirming denial of pre-judgment interest, it does not impose a rigid, judicially created limitation on the discretion of district courts to award interest. Accordingly, we hold that the district court did not abuse its discretion in awarding pre-judgment interest.

**F**

According to Ascent, Rathborne (*i.e.*, Rathborne Land Company) does not own and is not the lessor of the property at stake in this case. Ascent contends that the property is instead owned by Rathborne Land Company's parent company, of which it is a wholly owned subsidiary, Rathborne Companies East, L.L.C. ("Rathborne East"). Because the implied obligations of the prudent operator are owed only to the lessor, Ascent argues that it owes no obligations to Rathborne Land Company and that only Rathborne East would have the right to recover damages attributable to breaches of the lease.

The parties stipulated in their pre-trial order as an "Uncontested Material Fact" that Rathborne Land Company was the lessor of the property at issue. Additionally, two of Ascent's officers testified at trial that they agreed to this stipulation. Only after the close of the trial, in moving to submit additional evidence, did Ascent's counsel raise the issue of mistaken parties. The district court denied Ascent's motion to dismiss on these grounds because it reasoned that both Rathborne Land Company and Rathborne East grew out of the same inheritance rights. The court did, however, specifically recognize that Ascent had preserved the issue for appeal.

Normally a party is bound by his stipulations as a "stipulation among the parties to a lawsuit is akin to a contract." *United States v. McKinney*, 758 F.2d 1036, 1047 (5th Cir. 1985). Under FED. R. CIV. P. 16(d) and (e), a pretrial order "controls the course of the action unless the court modifies it," and "[t]he court may modify the order issued after a final pretrial conference only to prevent manifest injustice." This circuit has recognized, however, that "[j]ustice sometimes requires that stipulations made under misapprehension or without full knowledge of all the facts, or as the result of mistake, be set aside." *Brinson v. Tomlinson*, 264 F.2d 30, 34 (5th Cir. 1959) (citations omitted). "[T]he trial court has not only the right but the duty to relieve a party from a pretrial stipulation where necessary to avoid manifest injustice and adjudications based on the [supporting] theory, or where there is substantial evidence contrary to the stipulation." *Coastal States Mktg., Inc. v. Hunt*, 694 F.2d 1358, 1369 (5th Cir. 1983) (quotation and citations omitted).

Here, the "substantial evidence contrary" to Ascent's stipulation to Rathborne Land Company's ownership of the leased property is Exhibit 98, the agreement underlying the 2006 seismic survey. According to Ascent, Exhibit 98 identifies Rathborne East as the owner of the leased property at issue in this case. Rathborne Land Company has likewise produced evidence that it is, in

fact, the proper plaintiff.  Indeed, both parties continued to dispute the factual basis of the stipulation up to oral argument, including seeking to submit additional evidence.  Because of the ongoing evidentiary dispute, the proper course of action is to remand this factual determination to the district court.

### III

We AFFIRM the district court's conclusion that the demand requirement was satisfied, that the proper standard for determining lost leasing revenue is "more probable than not," that Rathborne was entitled to lost leasing revenue for a second leasing opportunity, that Rathborne was entitled to pre-judgment interest, and that attorney's fees were appropriate.  However, we VACATE and REMAND the lost leasing and seismic fee damages for recalculation based solely on Ascent's 449.57-acre lease.  We also REMAND to the district court the determination of the proper plaintiff.